IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATASHA LIPSCOMB, *et al.* *Plaintiffs*, v. THE RADDATZ LAW FIRM, P.L.L.C., *et al.* *Defendants*. | Case No. 14-cv-1958 JEB Judge Boasberg |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES**
**<u>IN OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS</u>**

Chinh Q. Le (D.C. Bar No. 1007037)
Heather M. Latino (D.C. Bar No. 1007691)
LEGAL AID SOCIETY OF THE DISTRICT OF COLUMBIA
1331 H Street, N.W.
Suite 350
Washington, D.C. 20005
(202) 628-1161

Theodore A. Howard (D.C. Bar No. 366984)
Mary E. Borja (D.C. Bar No. 442462)
WILEY REIN LLP
1776 K Street, N.W.
Washington, DC 20006
(202) 719-7000

Attorneys for Plaintiffs

# TABLE OF CONTENTS

Page(s)

Table of Authorities ........ ii

INTRODUCTION AND STATEMENT OF THE CASE ........ 1

STANDARD OF REVIEW ........ 4

ARGUMENT ........ 4

I. THE DEFENDANTS' PSEUDO-"ABSENTION" ARGUMENTS FOR AVOIDING APPLICATION OF THE FDCPA ARE WITHOUT MERIT ........ 4

A. Consistent With Its Purpose And Congress' Intent, The FDCPA Must Be Liberally Construed ........ 6

B. Under Governing Precedent, The Plaintiffs' Allegations Establish A Viable, Plausible Claim Upon Which Relief Can Be Granted Under The FDCPA ........ 11

C. The Defendants' Arguments Mischaracterize The Nature And Impact Of The Eviction Complaints At Issue ........ 13

II. THE PLAINTIFFS' ALLEGATIONS SET FORTH A PLAUSIBLE CLAIM FOR MATERIAL MISREPRESENTATION UNDER FDCPA SECTION 1692e ........ 19

III. THE DEFENDANTS HAVE FAILED TO IDENTIFY ANY LEGAL BASIS FOR DISMISSAL OF THE PLAINTIFFS' CLAIM ASSERTED UNDER FDCPA SECTION 1692f ........ 22

IV. THE BETTER-REASONED AUTHORITIES SUPPORT THE CONCLUSION THAT PRIVATE ACTIONS UNDER THE FDCPA MAY SEEK AND OBTAIN DECLARATORY AND INJUNCTIVE RELIEF AS WELL AS DAMAGES ........ 25

CONCLUSION ........ 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ballard v. Equifax Check Servs., Inc.*,
27 F. Supp. 2d 1201 (E.D. Cal. 1988)....27

*Barnes v. Fleet Nat'l Bank, N.A.*,
370 F3.d 164 (1st Cir. 2004)....8

*Barnhart v. Peabody Coal Co.*,
537 U.S. 149 (2003)....28

*Burford v. Sun Oil Co.*,
319 U.S. 315 (1943)....5

*Carroll v. United Compucred Collections, Inc.*,
No. 1-99-0152, 2002 WL 32936511 (M.D. Tenn. Nov. 15, 2002)....27

*Cobell v. Norton*,
240 F.3d 1081 (D.C. Cir. 2001)....27, 28

*Colorado River Water Conservation District v. United States*,
424 U.S. 800 (1976)....5, 6

*Derisme v. Hunt Liebert Jacobson P.C.*,
880 F. Supp. 2d 339 (D. Conn. 2012)....17, 18

*Donohue v. Quick Collect, Inc.*,
592 F.3d 1027 (9th Cir. 2010)....13

*Ellis v. General Motors Acceptance Corp.*,
160 F.3d 703 (11th Cir. 1998)....8

*Foster v. D.B.S. Collection Agency*,
No. 01-CV-514, 2002 WL 484500 (S.D. Ohio March 26, 2002)....27

*Gabriele v. Am. Home Mortgage Serv., Inc.*,
503 Fed. App'x 89 (2d Cir. 2012)....19

*Hansen v. Ticket Track, Inc.*,
213 F.R.D. 412 (W.D. Wash. 2003)....27

*Heathman v. Portfolio Recovery Assocs., LLC*,
Case No. 12-cv-201-IEG (RBB), 2013 WL 1284184 (S.D. Cal. March 26, 2013)..................7

*Heintz v. Jenkins*,
514 U.S. 291 (1995)..........................................................................................12, 13

*Hemmingsen v. Messerli & Kramer, P.A.*,
674 F.3d 814 (8th Cir. 2012) ..................................................................................22

*Hunt v. Check Recovery Systems, Inc.*,
241 F.R.D. 505 (N.D. Cal. 2007), *modified on other grounds*, No. CO5-04993 MJJ, 2007 WL 2220972 (N.D. Cal. Aug. 1, 2007), *aff'd sub nom. Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137 (9th Cir 2009) ........................................................................................26

*Johnson v. Edgewood Mgmt. Corp.*,
512 A.2d 287 (D.C. 1986) ......................................................................................16

*Johnson v. Riddle*,
305 F.3d 1107 (10th Cir. 2002) ...............................................................................7

*Lesher v. Law Offices of Mitchell N. Kay*,
650 F.3d 993 (3d Cir. 2011).....................................................................................7

*Mann v. Acclaim Financial Servs., Inc.*,
232 F.R.D. 278 (S.D. Ohio 2003).............................................................................27

*Mann v. GC Servs. Ltd. Partnership*,
162 F.R.D. 313 (N.D. Ill. 1995)...............................................................................27

*Marx v. General Revenue Corp.*,
__ U.S. __ 133, S. Ct. 1166, 1175 (2013)...................................................................28

*McCullogh v. Johnson, Rodenburg & Lauinger, LLC*,
673 F.3d 939 (9th Cir. 2011) .............................................................................23, 24

*McMillan v. Collection Professionals, Inc.*,
455 F.3d 754 (7th Cir. 2008) .............................................................................20, 23

*Midland Funding, LLC v. Brent*,
644 F. Supp. 2d 961 (N.D. Ohio 2009).....................................................................22

*In re Monroy*,
650 F.3d 1300 (9th Cir. 2010) ..................................................................................7

*Muldrow v. EMC Mortgage Corp.*,
657 F. Supp. 2d 171 (D.D.C. 2009)......................................................................... *passim*

*Penn v. Cumberland*,
883 F. Supp. 2d 581 ....................................................................................................22

*Pitts v. Howard Univ.*,
13 F. Supp. 3d 14, 17 (D.D.C. 2014) (Boasberg, J.)..................................................................4

*Railroad Comm'n v. Pullman Co.*,
312 U.S. 496 (1941)....................................................................................................5

*Romea v. Heiberger & Assocs.*,
163 F.3d 111 (2d Cir. 1998)..........................................................................................13

*Sayyed v. Wolpolf & Abramson*,
485 F.3d 226 (4th Cir. 2007) .......................................................................................22

*Shannon & Luchs Co. v. Jeter*,
469 A.2d 812 (D.C. 1983) ...........................................................................................16

*Sissel v. U.S. Dep't of Health and Human Servs.*,
760 F.3d 1 (D.C. Cir. 2014)............................................................................................4

*Strong v. National Credit Mgmt. Co.*,
600 F. Supp. 46 (E.D. Ark. 1984)...................................................................25, 26, 28

*Sykes v. Mel Harris & Assocs., LLC*,
285 F.R.D. 279 (S.D.N.Y. 2012) ..................................................................................22

*Trans-Lux Radio City Corp. v. Service Parking Corp.*,
54 A.2d 144 (D.C. Mun. App. 1947)...............................................................................16

*Tutt v. Doby*,
459 F.2d 1195 (D.C. Cir. 1972)......................................................................14, 15, 16

*U.S. v. Philip Morris USA, Inc.*,
Civ. Action No. 99-2496, 2014 WL 2505683 (D.D.C. June 2, 2014)..................................28

*Wagner Seed Co. v. Bush*,
709 F. Supp. 249 (D.D.C. 1989).......................................................................................8

*Walsh v. Law Offices of Howard Lee Schiff, P.C.*,
Case No. 3:11-cv-1111 SRU, 2012 WL 4372251 (D. Conn. Sept. 24, 2012).........................19

*Washington v. Roosen, Varchetti & Oliver, PLLC*,
894 F. Supp. 2d 1015 (W.D. Mich. 2012) .........................................................................22

*Weiss v. Regal Collections*,
3985 F.3d 337 (3d Cir. 2004)...........................................................................25, 26, 28

*Wilson v. Draper & Goldberg, PLLC*,
443 F.3d 373 (4th Cir. 2006) ....................9, 10

*Young v. Meyer & Njus, P.A.*,
183 F.R.D. 231 (N.D. Ill. 1998)....................27

*Younger v. Harris*,
401 U.S. 37 (1971)....................5

*Zimmerman v. Puccio*,
613 F.3d 60 (1st Cir. 2010)....................8

**Statutes**

15 U.S.C. §§ 1692(a)-(e)....................7

15 U.S.C. § 1692a(3) ....................11

15 U.S.C. § 1692e....................19, 22, 23

15 U.S.C. § 1692f .................... *passim*

15 U.S.C. § 1692k....................25, 26, 28

15 U.S.C. §1692l....................26, 28

**Rules and Regulations**

Rule 14-II, D.C. Superior Court Rules, Landlord and Tenant Branch ....................16

Rule 12(b)(6), Fed. R. Civ. P ....................4, 9, 20, 25

Plaintiffs Natasha Lipscomb, Kimberly McLaughlin, Margaret O'Brien and Felicia Pate ("Plaintiffs"), by their attorneys, hereby submit their Memorandum of Points and Authorities in Opposition to the Motion to Dismiss filed by defendants The Raddatz Law Firm, P.L.L.C., Mark R. Raddatz, Esq., and Edward L. Pugh II, Esq. ("Defendants"), on January 30, 2015.

## INTRODUCTION AND STATEMENT OF THE CASE

Plaintiffs commenced this action, pursuant to specified provisions of the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), on or about November 19, 2014, for themselves and on behalf of a putative class of hundreds of similarly-situated residents of District of Columbia rental properties who have been served with purportedly Verified Complaints for Possession filed in the Landlord and Tenant Branch ("L/T Branch") of the District of Columbia Superior Court by the Defendants. Notwithstanding the Defendants' affirmation that the pleadings they prepared and filed against the Plaintiffs and the putative class members by the Defendants were, as a matter of fact and law, "verified," the submissions in reality contain demonstrably false statements regarding the federally-subsidized rental properties the Defendants sought to repossess on behalf of the landlord clients they represented. The Defendants falsely represented in hundreds of pleadings (at a minimum) that they filed in the Superior Court's L/T Branch that the rental properties occupied by the Plaintiffs and the putative class members are "not subsidized," under circumstances in which the converse was clearly true. As not only eviction and repossession were sought by these actions, but also the recovery of unpaid rent allegedly due and owing *in the form of a money judgment*, the Plaintiffs contend that the Defendants' conduct implicates "debt collection" subject to the FDCPA; specifically, the Plaintiffs claim that the Defendants' misrepresentations concerning the subsidy status of the rental properties at issue contravene the FDCPA's proscriptions against making "false and

misleading statements" and/or using "unfair or unconscionable means" to collect debts. *See* 15 U.S.C. §§ 1692e, 1692f.

Each of the four named Plaintiffs resides in a rental unit leased from Capitol Gateway and, in each instance, their monthly rent is subject to a subsidy provided by the D.C. Housing Authority ("DCHA") and the U.S. Department of Housing and Urban Development ("HUD"). *See* Complaint for Declaratory and Injunctive Relief and Damages (ECF Docket No. 1) ("Complaint"), ¶¶ 5-8. Utilizing the standard-form, pre-printed "Verified Complaint for Possession of Real Property -- Form 1A (Non-Payment of Rent-Residential Property)" adopted by the Superior Court for use in the L/T Branch effective as of February 2010 (*see* Complaint, ¶ 19), the Defendants initiated a separate eviction proceeding against each of the named Plaintiffs by filings dated November 20, 2013 and November 26, 2013, respectively. *Id.*, ¶¶ 23-26; *see also id.*, Exhibits 1-4 thereto. In each instance, notwithstanding the subsidized nature of the rental property at issue and the purportedly sworn and verified nature of the pleading itself, the Defendants falsely represented that each named Plaintiffs' rental was "not subsidized and is exempt from rent control" and also checked a box, in response to Paragraph No. 4 -- concerning whether "the rent for the property [at issue] is subsidized by the federal or local government -- indicating "[n]o" subsidy. *Id.*

As distinguished from the overwhelming majority of tenants of D.C. rental properties sued by landlords in the Superior Court's L/T Branch who proceed without the benefit of counsel (*see id.*, ¶ 18), the named Plaintiffs herein fortuitously obtained legal representation by attorneys employed by the Legal Aid Society of the District of Columbia ("Legal Aid"). *Id.*, ¶ 27. Thereafter, in each of the named Plaintiffs' separate actions, Legal Aid counsel filed Answers to the Defendants' Complaints in which Legal Aid, *inter alia*, expressly disputed and denied the

correctness of the Defendants' purportedly sworn affirmative representations that the rental properties at issue were *not* subject to a DCHA/HUD subsidy.[1]

Despite the fact that Legal Aid, as the named Plaintiffs' defense counsel in the underlying eviction actions, brought to the Defendants' attention the false representations in the pleadings they had filed, the Defendants made no effort whatsoever to withdraw, amend or otherwise correct their Complaints in the Superior Court L/T proceedings. Moreover, as revealed by Legal Aid's subsequent investigation, the Defendants not only failed or refused to correct their false pleadings in the named Plaintiffs' cases, but also filed hundreds of additional L/T branch Complaints against other similarly-situated low-income tenants in which the Defendants again expressly misrepresented the subsidy status of the rental property at issue, stating that it was *not* subsidized. Complaint, ¶¶ 28-34. Only after ascertaining the existence of this on-going pattern of wrongful, deceitful conduct did Legal Aid undertake the activities culminating in the filing of the instant lawsuit.

---

1 *See generally* Amended Answer of Defendant Natasha Lipscomb, ¶ 5 at 1 ("Defendant asserts that, contrary to the representation in the Complaint, the premises is in fact subsidized.") (filed February 4, 2014) (true and correct copy attached hereto as Exhibit A); *see also id.*, Fourth Defense at 2 ("Plaintiff's claim for rent and/or water charges is barred due to the fact that, upon information and belief, Plaintiff has failed to comply with the rules, regulations. and policies of the U.S. Department of Housing and Urban Development and the D.C. Housing Authority governing Defendant's rental subsidy.") Substantially similar responsive pleadings were filed on behalf of the other three named Plaintiffs herein. The Court may properly take judicial notice of the contents and substance of these Superior Court pleadings as documents referred to in, relating to and/or incorporated by reference or necessary implication in the Plaintiffs' Complaint and the Defendants' Motion to Dismiss. *See generally Brown v. McHugh*, 972 F. Supp. 2d 58, 64 (D.D.C. 2013) ("The court 'may consider . . . the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the court] may take judicial notice." (*quoting EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)) (footnote omitted)); *U.S. ex rel. Hood v. Satory Global, Inc.*, 946 F. Supp. 2d 69, 78 (D.D.C. 2013) (same).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action in which the complaint fails to state a claim upon which relief can be granted. To survive a motion to dismiss brought pursuant to Rule 12(b)(6), the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sissel v. U.S. Dep't of Health and Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the motion to dismiss, "the Court 'must treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of any inferences that can be derived from the facts alleged.'" *Pitts v. Howard Univ.*, 13 F. Supp. 3d 14, 17 (D.D.C. 2014) (Boasberg, J.), *quoting Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (*quoting Shuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (other citation omitted)). "The notice-pleading rules are 'not meant to impose a great burden upon a plaintiff,' and he must thus be given every favorable inference that may be drawn from the facts alleged." *Pitts*, 13 F. Supp. 3d at 17-18 (citations omitted). Ultimately, the "[p]laintiff must put forth 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 18 (citations omitted). If the complaint does so, the motion to dismiss must be denied.

## ARGUMENT

### I. THE DEFENDANTS' PSEUDO-"ABSTENTION" ARGUMENTS FOR AVOIDING APPLICATION OF THE FDCPA ARE WITHOUT MERIT

Without ever actually identifying or invoking a definitive legal ruling or principle that would explain why this Court, which undoubtedly has jurisdiction over this action, should exercise its discretion by declining to address and resolve whether the Defendants violated the

FDCPA, the Defendants offer a hodge-podge of disparate arguments as to why their repeated filing of demonstrably false debt collection-related pleadings in the L/T Branch of the D.C. Superior Court should escape adjudication by this Court. In essence, the Defendants suggest that the Court should *abstain* from addressing and resolving the Plaintiffs' viable FDCPA claims on the grounds that the eviction proceedings initiated by the Defendants are more about repossession of property than they are about debt collection, and the rules and procedural safeguards already in place in the D.C. Superior Court's L/T Branch are adequate to protect the Plaintiffs against any misconduct engaged in by the Defendants, rendering federal court intervention unnecessary.

The Defendants pseudo-"abstention" argument fails on every possible level.[2] For one thing, the Defendants, in failing to address the intent and purpose behind enactment and

---

2 Over time, the federal courts have developed a host of well-recognized principles pursuant to which they may (or possibly must) decline to address and rule on a case within their subject-matter jurisdiction for prudential or comity reasons. For example:

- Under *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941) and its progeny, the federal courts will decline to adjudicate the constitutionality of a state statute fairly open to interpretation until the courts of the state in which the statute was enacted have had the opportunity to construe its meaning ("*Pullman* abstention");
- Under *Younger v. Harris*, 401 U.S. 37 (1971) and its progeny, federal courts are precluded from addressing a plaintiff's federal civil rights tort claim where that plaintiff is the subject of criminal prosecution in state court on the basis of the same underlying facts and circumstances upon which the federal claim is premised ("*Younger* abstention");
- Under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) and its progeny, a federal court presiding over an action based upon diversity jurisdiction should properly decline to proceed if the claim at issue implicates a difficult and unsettled issue of state law having policy implications beyond the scope of the instant dispute that would be better addressed and resolved by the state court in the first instance ("*Burford* abstention"); and
- Under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) and its progeny, where parallel actions between the same parties and involving the same issues are simultaneously proceeding in federal and state

implementation of the FDCPA in a meaningful manner, fail to acknowledge the reasons why a broad interpretation thereof consistent with its remedial objective is appropriate and counsels against acceptance of the Defendants' contrived reading. Second, as the Defendants themselves belatedly admit, it is settled precedent that attorneys acting as debt collectors in the context of litigation -- precisely as the Defendants have acted here -- are indisputably subject to the FDCPA.

Finally, the Defendants' effort to minimize, out of existence, the clear debt-collection motivation animating the patently false pleadings they prepared, filed and served upon the Plaintiffs and hundreds of other D.C. rental property residents, is based upon a misconceived position supported only by outdated and inapplicable precedent.

For all these reasons, elaborated below, the Defendants' argument that this Court should simply refuse to undertake analysis and proper enforcement of the FDCPA in the exercise of its discretion must be rejected.

### A. Consistent With Its Purpose And Congress' Intent, the FDCPA Must be Liberally Construed

As a threshold matter, it must be recognized that the Defendants' suggested narrow construction and application of the provisions of the FDCPA for which the Defendants contend cannot be reconciled with the broad remedial purpose and effect Congress intended the statute to have.

Although the Defendants make passing reference to the rationale underlying the enactment of the FDCPA by Congress -- *see* Defendants' Memorandum of Points and

---

> court, the federal court, in the exercise of prudence and sound discretion, may properly stay or dismiss without prejudice the federal court action in favor of the parallel state court proceeding ("*Colorado River* abstention").

Defendants have failed to invoke any of these recognized abstention doctrines, none of which would apply here in any event, but they nonetheless effectively seek precisely that result.

Authorities in Support of their Motion to Dismiss ("Defendants' Mem.") (ECF Dkt. No. 13-1), at 3 -- they utterly fail to offer any explanation as to how the cramped interpretation of the statute that they ask this Court to espouse is -- or could be -- consistent with the FDCPA's underlying legislative purpose.

In enacting the FDCPA, Congress, in its Statement of Purpose, noted that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. . . . It is the purpose of this title to eliminate abusive debt collection practices by debt collectors . . . and to promote consistent State action to protect consumers against debt collection abuses." *See generally* 15 U.S.C. §§ 1692(a)-(e). Consistent with these stated objectives, the federal courts, in construing and applying the provisions of the FDCPA, have repeatedly noted that a liberal construction is consistent with its obviously broad remedial purpose. *See, e.g.*, *Lesher v. Law Offices of Mitchell N. Kay*, 650 F.3d 993, 996 (3d Cir. 2011) ("Because the FDCPA is a remedial statute, we construe the language broadly so as to effect its purpose." (Citation omitted.)); *accord Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002) ("Because the FDCPA . . . is a remedial statute, it should be construed liberally in favor of the consumer." (citing authorities)); *Heathman v. Portfolio Recovery Assocs., LLC*, Case No. 12-cv-201-IEG (RBB), 2013 WL 1284184, at *2 (S.D. Cal. March 26, 2013) ("The Ninth Circuit has repeatedly admonished that 'the FDCPA should be construed liberally in favor of the consumer,' and thus that courts should not 'create needless loopholes that work to the disadvantage of the individuals the FDCPA was enacted to protect.'" (Citations omitted.)).[3]

---

3 The principle articulated in these FDCPA cases is consistent with the approach endorsed by the federal courts with respect to interpretation and application of a whole host of analogous federal consumer protection laws. *See, e.g.*, *In re Monroy*, 650 F.3d 1300, 1301 (9th Cir. 2010) (order) ("Courts analyzing [the Real Estate Settlement Procedures Act] have found that 'Congress intended RESPA to be a remedial consumer-protection statute' and that the statute is

Without expressly espousing the "liberal construction of a remedial statute" principle, this Court essentially gave effect to the same concept in the case of *Muldrow v. EMC Mortgage Corp.*, 657 F. Supp. 2d 171 (D.D.C. 2009), the only FDCPA case decided by the local federal courts either cited by the Defendants or identified by the Plaintiffs' research. In *Muldrow*, this Court (Urbina, J.) declined to exempt a law firm acting as a substitute trustee on behalf of a mortgage company in foreclosure proceedings against the plaintiff's residence from application of the FDCPA on the grounds that to do so would contravene the statute's clear purpose and intent.

The FDCPA litigation in *Muldrow* grew out of a loan the plaintiff obtained from defendant EMC Mortgage Co. ("EMC") to purchase her home, secured by a first deed of trust on the residence. When plaintiff fell behind on her monthly loan reimbursement payments, EMC retained a law firm, Rosenberg & Associates LLC ("Rosenberg") as substitute trustee to commence foreclosure proceedings. *See generally* 657 F. Supp. 2d at 172. In June 2008, Rosenberg wrote the plaintiff, identifying itself as EMC's counsel and notifying plaintiff of the debt owed and that, absent payment of the amount due, a foreclosure sale of her property would follow. *Id.* at 172-73. Later, plaintiff was notified of the targeted foreclosure sale date, and that Rosenberg should be contacted if the plaintiff wished to halt the foreclosure sale. *Id.* at 173.

---

therefore 'construed liberally in order to best serve Congress' intent." (Citations omitted.)); *Zimmerman v. Puccio*, 613 F.3d 60, 71 (1st Cir. 2010) ("[The] overall scheme [of the Credit Repair Organizations Act] is a sweeping consumer protection act explicitly intended to 'protect the public from unfair or deceptive advertising and business practices by credit repair organizations.' 15 U.S.C. § 1679(b). Such consumer protection statutes are construed 'liberally in favor of consumers.'" (Citation omitted.)); *Barnes v. Fleet Nat'l Bank, N.A.*, 370 F3.d 164, 170-71 (1st Cir. 2004) (same) (Truth In Savings Act); *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 707-08 (11th Cir. 1998) (same) (Truth In Lending Act); *cf. Wagner Seed Co. v. Bush*, 709 F. Supp. 249, 252 (D.D.C. 1989) ("[A] 'remedial' statute is to be construed in favor of those whom it was intended to protect." (*citing Bell v. Brown*, 557 F.2d 849, 852 (D.C. Cir. 1997)).

Plaintiff subsequently contested her alleged debt and contacted EMC to discuss loss mitigation to stop the foreclosure sale, which ultimately did not occur.

In September 2008, plaintiff sued EMC and Rosenberg, alleging that EMC violated the D.C. Consumer Protection Procedures Act and that Rosenberg violated the FDCPA. After the action was removed from D.C. Superior Court to this Court, Rosenberg moved to dismiss under Fed. R. Civ. P. 12(b)(6). *Id.* at 173-74. Specifically, Rosenberg asserted that, acting solely in the capacity of EMC's substitute trustee, it was not a "debt collector" under the provisions of the FDCPA cited by the plaintiff in her complaint -- Sections 1692d, 1692e and 1692g.[4] Secondarily, Rosenberg argued that even if it could somehow be characterized as a "debt collector" under the FDCPA, its actions did not constitute involvement in the collection of a debt as defined by the statute. *Id.* at 175-76.

Noting the absence of governing or otherwise persuasive authority within the D.C. Circuit, Judge Urbina found the guidance supplied by *Wilson v. Draper & Goldberg, PLLC*, 443 F.3d 373 (4th Cir. 2006), a case involving closely-analogous facts, to be most authoritative and compelling on the issues presented by Rosenberg' s motion. On the question of whether the plaintiff's alleged default on a Deed of Trust note resulting in foreclosure proceedings implicated a "debt" for FDCPA purposes, Judge Urbina specifically cited and quoted with approval the Fourth Circuit's analysis indicating that failure to find the existence of a "debt" subject to the

4 Rosenberg's non-"debt collector" argument was based upon a technical reading and interpretation of Section 1692a(6) of the FDCPA, which provides that "'[f]or the purpose of [section 1692f(6) of this title], [the term "debt collector"] . . . includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.'" On the basis of this language and the facts that: (i) as substitute trustee, Rosenberg was engaging in the enforcement of a security interest, and (ii) plaintiff had not alleged any violation of Section 1692f(6) in her Complaint, Rosenberg argued that it therefore could not be defined as a "debt collector" for purposes of the Act. *Id.* at 175.

FDCPA under essentially the same circumstances "'would create an enormous loophole in the [FDCPA] immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt.'" *Muldrow*, 657 F. Supp. 2d at 176, *quoting Wilson*, 443 F.3d at 376 (original citations omitted).

The Court likewise followed *Wilson* in rejecting defendant Rosenberg's contention that it had not acted as a "debt collector" for purposes of the FDCPA:

> Like the defendant in *Wilson*, Rosenberg is a law firm that was hired as a substitute trustee to enforce a Deed of Trust Note. Nevertheless, in initiating foreclosure proceedings, Rosenberg undertook the role of debt collector and communicated with the plaintiff in a manner regulated by the FDCPA. *See Wilson*, 443 F.3d at 376-78. Adopting the defendant's logic that law firms acting as substitute trustees for mortgage holders are exempt from the provisions of the FDCPA is contrary to the stated purpose of the FDCPA. *See* 15 U.S.C. § 1692(a) (explaining that the FDCPA is designed to protect consumers from unfair collection practices). Accordingly, the court determines that the plaintiff has alleged sufficient facts to support her claim that, for the purposes of the actions described in the complaint, the plaintiff's mortgage is a "debt" and defendant Rosenberg was acting as a "debt collector."

657 F. Supp. 2d at 176. The motion to dismiss was denied accordingly. *Id.*

This Court's refusal, in *Muldrow*, to adopt a contrived reading of the FDCPA that would have the effect of "creat[ing] an enormous loophole in the [FDCPA]," provides compelling, if not controlling, guidance regarding to the appropriate disposition of the Defendants' essentially identical effort here. The Defendants attempt to distinguish the *holding* in *Muldrow* on the grounds that since in that case there were written communications between Rosenberg and the plaintiff before foreclosure proceedings commenced, "[the] court did not address whether court filings to foreclose alone could trigger the FDCPA." Defendants' Mem. at 6. But this argument simply disregards the broader essential thrust of *Muldrow*: *i.e.*, that this Court disfavors unduly narrow interpretations of the scope of the FDCPA as inconsistent with its stated purpose. The Defendants' attempt to categorically exempt from the provisions of the FDCPA, as a matter of

judicial discretion, the filing of demonstrably false pleadings in actions seeking both eviction and money judgments for back rent allegedly due and owing cannot be harmonized with the broad remedial intent and purpose underlying the statute. Defendants have not even attempted to show otherwise. For this reason alone, the Motion to Dismiss should be denied.

### B. Under Governing Precedent, The Plaintiffs' Allegations Establish A Viable, Plausible Claim Upon Which Relief Can Be Granted Under The FDCPA

As this Court recognized in *Muldrow*:

> The FDCPA protects (1) consumers (2) who have been subject to abusive, deceptive or unfair collection practices (3) by a debt collector (4) in an attempt to collect a debt.

657 F. Supp. at 174-75, *citing Piper v. Portnoff*, 396 F.3d 227, 232 (3d Cir. 2005) (*citing* 15 U.S.C. § 1692e-f). The Plaintiffs' Complaint herein clearly satisfies these elements. The named Plaintiffs are plainly "consumer[s]" -- *i.e.*, "natural person[s] obligated or allegedly obligated to pay any debt." *See* 15 U.S.C. § 1692a(3). The Plaintiffs allege that they "have been subject to abusive, deceptive [and] unfair debt collection practices" as the targets of pleadings containing patently false statements filed by the Defendants in the L/T Branch of the Superior Court seeking to evict them from their rental properties and requesting money judgments for back rent allegedly due and owing. *See* Complaint, ¶¶ 23-26, 45-49, 51-54. The Complaint further expressly alleges that in bringing eviction actions in the L/T Branch against the Plaintiffs and others similarly situated, the Defendants acted as "debt collectors" within the meaning of the FDCPA. *Id.*, ¶¶ 46, 52; *see* 15 U.S.C. § 1692a(6) ("The term 'debt collector' means any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.").[5]

---

5 Nowhere in the Defendants' Motion to Dismiss papers do they contend that they do not come within the statutory definition of "debt collectors" established by the FDCPA; nor, in good

Finally, since the eviction complaints filed by the Defendants against the Plaintiffs each contain express allegations of payments owed by the Plaintiffs to the Defendants' landlord clients and seek a money judgment in the amount allegedly owed -- *see* Complaint, ¶¶ 23-26 & Exhibits 1-4 thereto -- the Defendants have plainly engaged "in an attempt to collect a debt." Thus, the Plaintiffs' Complaint satisfies each of the four elements of a viable FDPA claim identified by this Court in *Muldrow*.

In *Heintz v. Jenkins*, 514 U.S. 291 (1995), the Supreme Court addressed "whether the term 'debt collector' in the [FDCPA] applies to a lawyer who 'regularly," *through litigation*, tries to collect consumer debts." *Id.* at 293 (emphasis in original). The Court articulated two compelling reasons for its conclusion answering this question in the affirmative, as follows:

> *First*, the Act defines the "debt collector[s]" to whom it applies as including those who "regularly collec[t] or attemp[t] to collect, directly or indirectly, [consumer] debts owed or due or asserted to be owed or due to another." § 1692a(6). In ordinary English, a lawyer who regularly tries to obtain payment or consumer debts through legal proceedings is a lawyer who regularly "attempts" to "collect" those consumer debts. *See, e.g.*, Black's Law Dictionary 263 (6th ed. 1990) ("To collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings").
>
> *Second*, in 1997, Congress enacted an earlier version of this statute, which contained an express exemption for lawyers. That exemption said that the term "debt collector" did not include "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client." Pub. L. 95-109, § 803(6)(F), 91 Stat. 874, 875. In 1986, however, Congress repealed this exemption in its entirety, Pub. L. 99361, 100 Stat. 768, without creating a narrower, litigation-related exemption to fill the void. Without more, then, one would think that Congress intended that lawyers be subject to the Act whenever they meet the general "debt collector" definition.

*Id.* at 294-95 (emphasis in original). After considering but uniformly rejecting the petitioner's arguments for finding an implied exemption for lawyers engaged in litigation activities, the Court concluded that "we agree with the Seventh Circuit that the Act applies to attorneys who

---

faith, could the Defendants do so. *See* Complaint, ¶ 12 ("The Raddatz Firm openly markets itself as a debt collection firm.").

'regularly' engage in consumer debt-collection activity, even when that activity consists of litigation." *Id.* at 299; *see also Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1031 (9th Cir. 2010) ("We . . . conclude that a complaint served directly on a consumer to facilitate debt collection efforts is a communication subject to the requirements of § 1692f. [¶] Concluding otherwise would put our decision in tension with the Supreme Court's reasoning in *Heintz*."); *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 114-17 (2d Cir. 1998) (noting, in the context of analysis holding that a tenant's back rent due and owing constitutes a "debt" for purposes of the FDCPA, that the Supreme Court categorically rejected any argument for a broad "litigation activity exemption" in *Heintz v. Jenkins*).

*Heintz* is controlling, and effectively dictates the rejection of the Motion to Dismiss. The Defendants, as the Complaint plainly alleges, are debt collectors engaging in attempts to collect debts allegedly owed by the Plaintiffs to the Defendants' clients through the eviction actions they commenced in the L/T Branch of the Superior Court -- *i.e.*, "through litigation." No applicable exemption exists within the FDCPA, and no exception to *Heintz* has been identified by the Defendants. Indeed, Defendants concede, albeit grudgingly, that it is "well settled that the FDCPA applies to lawyers who engage in debt collection through litigation[.]" Defendants' Mem. at 7. The Plaintiffs agree; Defendants' Motion should therefore be denied.

### C. The Defendants' Arguments Mischaracterize The Nature And Impact Of The Eviction Complaints At Issue

Having failed either to contest this Court's subject-matter jurisdiction to hear and decide this action or to identify specific statutory language in the FDCPA itself or any controlling precedent distinguishing *Heintz* under which this case must be dismissed, the Defendants nonetheless press for dismissal on the basis of the two-pronged argument that the eviction cases they have filed in the L/T Branch are more about repossession of property than debt collection,

and because the rules and procedures of the L/T Branch are adequate to address any misconduct in which they might have engaged in filing false pleadings. Neither contention can withstand scrutiny.

First, as regards the fundamental nature and focus of the actions that the Defendants have filed against the Plaintiffs and hundreds of other low-income tenants in the L/T Branch, the Defendants insist that "[a]n eviction proceeding is an action filed by the owner of a rental property for the purpose of retaking possession of that property. . . . [i]t is not a collection of a consumer debt." Defendants' Mem. at 4; *see also id.* at 7 ("The act of filing a Verified Complaint for Possession of Real Property centers on enforcing a lease agreement, not collecting a consumer debt."). The Defendants' *ipse dixit* advocacy notwithstanding, however, the Complaints they filed against the Plaintiffs in the L/T Branch undeniably identify with specificity dollar amounts that each of the Plaintiffs allegedly failed to pay under each of their respective leases, and demanded a money judgment from the Plaintiffs in the particular dollar amounts previously identified. *See* Complaint, ¶¶ 23-26 & Exhibits 1-4 thereto.

Moreover, although the Defendants cite *Tutt v. Doby*, 459 F.2d 1195, 1198 (D.C. Cir. 1972) -- holding that the landlord in a repossession action has only a "collateral interest" in the amount of back rent due -- as support for their characterization of the eviction proceedings they filed, they fail to note that *Tutt* is limited by its particular facts and, in any event, has long since been undermined by more recent precedent expressing a significantly different view.

In *Tutt*, the D.C. Circuit[6] considered whether a default judgment entered by the Landlord-Tenant Court in an eviction proceeding could preclude the defaulting tenant from subsequently contesting the amount of unpaid rent owed in the landlord's post-judgment rent collection action.

---

6 At that time, this jurisdiction's highest tribunal, exercising appellate jurisdiction to review the decisions of the D.C. Court of Appeals.

The D.C. Court of General Sessions had entered summary judgment in favor of the landlord in the rent collection action, holding that the default judgment previously entered in the eviction action was *res judicata* with respect to the landlord's right to recover the same amount of unpaid rent that had been alleged as the basis for eviction, and the D.C. Court of Appeals affirmed.

The D.C. Circuit reversed. The Court, after noting that collateral estoppel, rather than *res judicata*, was the appropriate doctrine (459 F.2d at 1197-98), held that since the quantification of unpaid rent was never actually presented in or decided by the courts below, a necessary element for the application of collateral estoppel was missing. In this regard, the Court expressly recognized that D.C. law establishes a right of a tenant seeking to retain possession of his/her rental property to have the court fix the specific amount due and owing which, if then paid by the tenant, "[would] effectuate the objective of avoiding eviction." *Id.* at 1199 & n.3, *citing Trans-Lux Radio City Corp. v. Service Parking Corp.*, 54 A.2d 144 (D.C. Mun. App. 1947) ("*Trans Lux*"). However, the Court noted that no such determination had occurred in the proceedings below, because the tenant never appeared in the eviction proceeding and a default judgment regarding possession was entered.

> We do not think [the Court's lack *in personam* jurisdiction] can be set aside by the circumstance that where a tenant is seeking to retain possession the court may fix an amount which, if paid, will effectuate the objective of avoiding eviction. The authority to limit the possessory relief within the court's jurisdiction by giving defendant tenant a power conditional upon the payment of money does not establish a right to provide relief outside the court's jurisdiction. *With a tenant in default, the amount of rental due was neither determined in fact nor necessarily determined, for it was not genuinely before the court, except in an incidental sense that is too insubstantial for estoppel doctrine.*

*Id.* at 1198-99 (emphasis added; footnote omitted).

Viewed in its proper and complete context, it is obvious that the Court's characterization of the quantification of rent due and owing as an issue of merely "collateral interest" in eviction proceedings is not subject to generalization beyond the specific and peculiar facts presented in

*Tutt*. The Defendants' suggestion otherwise is misleading at best. Moreover, the continuing vitality of *Tutt* as precedent is seriously in question, if not clearly non-existent. Decisions of the D.C. Court of Appeals following the reorganization of the local court system, are plainly to the contrary. *See, e.g., Johnson v. Edgewood Mgmt. Corp.*, 512 A.2d 287, 289 (D.C. 1986) (describing *Trans-Lux* as having "directed the trial court" to "specifically find the amount of rent in arrears" (*quoting Trans-Lux*, 54 A.2d at 147-47); *Shannon & Luchs Co. v. Jeter*, 469 A.2d 812, 815 (D.C. 1983) ("Even when no money judgment is sought in a suit for possession, the court is *required* to make a determination of the amount of the arrears to provide the tenant the opportunity to stay enforcement of any judgment for possession through exercise of the equitable right of redemption." (Emphasis added.)); *see also* Rule 14-II, D.C. Superior Court Rules, Landlord-Tenant Branch (*requiring* the Court to determine and state on the record the *Trans-Lux* redemption amount in all cases in which a judgment for possession in favor of the Landlord is entered).

In light of the fact that the Defendants' eviction pleadings filed in the L/T Branch against the Plaintiffs expressly sought a money judgment and that current D.C. substantive law effectively requires a determination of the amount due and owing, the Defendants' reliance upon *Tutt* in an effort to characterize the unpaid rent issue as merely peripheral to the eviction actions they filed is clearly misplaced.

Similarly misplaced is the Defendants' last-ditch invocation of an argument that the processes and procedures governing proceedings in the L/T Branch of the Superior Court are somehow sufficient to address the Defendants' alleged misconduct and provide the Plaintiffs and other tenants with any protection they may require, thus obviating any need for federal court

action under the FDCPA.[7] *See* Defendants' Mem. at 5, 7. The only authority the Defendants cite in support of this proposition is *Derisme v. Hunt Liebert Jacobson P.C.*, 880 F. Supp. 2d 339 (D. Conn. 2012). Defendants' Mem. at 4-5. Apart from the fact that this district court decision from another jurisdiction is in no way controlling upon this Court, there are several other critical considerations that weigh against following *Derisme* here. First, the holding in *Derisme* turns on the court's determination that the foreclosure proceedings initiated by the defendant law firm in that case did not implicate the activities of a "debt collector" engaged in the "collection of a debt" within the meaning of the FDCPA. *See* 880 F. Supp. 2d at 361-63. In this regard, *Derisme* flatly conflicts with the conclusion reached by Judge Urbina of this Court in the *Muldrow* case on the same issue, as discussed above. Second, the court in *Derisme* expressly noted that if the foreclosure claim addressed therein had been combined with a claim for a money judgment with respect to the plaintiff's missed mortgage payments, the FDCPA might well apply. *Id.* at 364 ("This Court agrees that where there is an attempt to collect money in addition to the enforcement of a security interest, the . . . provisions of the FDCPA might apply to the conduct related to the collection of money."). Here, of course, the eviction pleadings filed by the

7 The Defendants, in a transparent attempt to shift attention from their own pattern of misconduct, suggest that the named Plaintiffs and/or their Legal Aid counsel were somehow legally *obligated*, in the context of the L/T Branch eviction proceedings, to alert the Defendants to the falsehood of the characterization of the Plaintiffs' rental properties as non-subsidized in the pleadings so that the Defendants could amend the pleadings as appropriate, and they go so far as to chide the named Plaintiffs for failing to file Rule 11 motions against the Defendants in the L/T Branch. *See* Defendants' Mem. at 2 n.1; *see id.* at 10-11 n.2. This Court should not be distracted by these diversionary tactics; the named Plaintiffs' Answers filed in the L/T Branch eviction cases expressly denied the Defendants' false statements, and also asserted Affirmative Defenses expressly premised upon the fact that the properties at issue were, in fact, subsidized. *See supra* Introduction and Statement of the Case at 3 & n.1 & Exhibit A hereto. In response, the Defendants did nothing but continue to file additional false eviction complaints. *Id.* at 3; *see* Complaint, ¶¶ 28-34.

Defendants against the Plaintiffs and others similarly situated in the L/T Branch expressly seek a money judgment for purportedly unpaid rent.

Third, because the ruling in *Derisme* was that the FDCPA was inapplicable because only the mortgagee's effort to enforce its security interest in real property was at issue, the Court's further analysis suggesting that "mortgagors in a foreclosure proceeding . . . do not need protection from abusive collection methods that are covered under the FDCPA because the state foreclosure process is highly regulated and court controlled" (*id.* at 365) was, at most, *dictum*, not a holding.

Fourth, and finally, unlike the alleged false representations by the defendant law firm that the plaintiff identified as the basis for her unsuccessful FDCPA claims in *Derisme*, the Defendants wrongful conduct here is fundamentally in direct derogation of the very L/T Branch processes and procedures that the Defendants blithely suggest are adequate to protect the Plaintiffs' interests. As expressly alleged in the Plaintiffs' Complaint herein, the inquiries regarding rent subsidy status that are incorporated in the standard-form Verified Complaint for Possession of Real Property-Form 1A were included by the Superior Court for the very purpose of soliciting information that would aid the Court in protecting the interests of tenants of subsidized housing who are typically unrepresented by legal counsel in eviction proceedings. Complaint, ¶¶ 18-22. By intentionally providing demonstrably false responses to these inquiries, the Defendants have consciously sought to frustrate the court's objective *and* deprive tenants of the very procedural protections that the Defendants now suggest should be sufficient to obviate any need for application of the FDCPA. The Court should not reward the Defendants' machinations by indulging such a perverse result.

For all of these reasons, the Defendants' attempt to avoid application of the FDCPA on a prudential basis is meritless; the Motion to Dismiss must accordingly be denied.

## II. THE PLAINTIFFS' ALLEGATIONS SET FORTH A PLAUSIBLE CLAIM FOR MATERIAL MISREPRESENTATION UNDER FDCPA SECTION 1692e

The Defendants contend that their misrepresentations contained in the eviction pleadings concerning the subsidy status of the Plaintiffs' rental housing were "not material" under the "least sophisticated consumer" materiality test applied by the federal courts, and that their actions were therefore not actionable under 15 U.S.C. § 1692e. Defendants' Mem. at 8. The Defendants' argument in this regard relies principally upon *Gabriele v. Am. Home Mortgage Serv., Inc.*, 503 Fed. App'x 89 (2d Cir. 2012). In *Gabriele*, the Court stated, in pertinent part, as follows:

> Although "[i]t is clear that Congress painted with a broad brush in the FDCPA[,]" not every technically false representation by a debt collector amounts to a violation of the FDCPA. Courts in this Circuit evaluate claims under the FDCPA according to how the "least sophisticated consumer" would understand the communication. As a result, "FDCPA protection 'does not extend to every bizarre or idiosyncratic interpretation of a collection notice' and courts should apply the standard in a manner that protects debt collectors against liability for unreasonable misinterpretations. Additionally, several other circuit courts, as well as a number of district courts within this Circuit, read a materiality requirement into the FDCPA's prohibition of false, deceptive, or misleading practices in the collection of a debt.

503 Fed. App'x at 94 (citations omitted).

Taking the analysis a step further, the Defendants invoke *Walsh v. Law Offices of Howard Lee Schiff, P.C.*, Case No. 3:11-cv-1111 SRU, 2012 WL 4372251 (D. Conn. Sept. 24, 2012), for the proposition that unless a plaintiff alleges and can show that false statements either caused the plaintiff confusion about the validity or amount of her debt or impeded her ability to

pay or challenge it, the misrepresentations are immaterial as a matter of law. Defendants' Mem. at 9.[8]

Relying upon this analytical framework, the Defendants proclaim that "[t]he alleged erroneous representation of the subsidy status of the Plaintiffs' rental properties in the Complaints for Possession at issue here are not material statements. Under the objective standard, the least sophisticated consumers can be expected to know whether they are living in subsidized housing, and would not be misled by an allegedly mis-checked box stating otherwise." *Id.* at 10. Contrary to the Defendants' breathtakingly conclusory and superficial analysis, however, it requires no stretch of the imagination to conceive of an unsophisticated tenant, unrepresented by counsel, who, upon receipt of a "verified" eviction complaint filed by his/her landlord's attorneys affirmatively representing that the tenant's rental housing is not subsidized:

- might assume that his/her failure to keep current on rent or utilities had the effect of forfeiting or cancelling the previously-existing subsidy; and
- cause the tenant to simply abandon efforts to contest liability or maintain possession, believing that even if he/she could fend off eviction by making the payment due and owing, his/her capacity to keep up with payment of *non-subsidized* rent on a going-forward basis would be an insurmountable burden.

---

8 Plaintiffs do not agree with the Defendants' implication -- *see* Defendants' Mem. at 8, *citing Lautman v. 2800 Coyle Street Owner's Corp.*, Case No. 14-cv-1868 (ARR/VVP), 2014 WL 4843947, at *10 (E.D.N.Y. 2014) -- that the "materiality" issue is always a questions of law for the Court that can be determined in the context of a motion to dismiss. *See, e.g., McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 760 (7th Cir. 2008) ("[T]he requisite inquiries under § 1692e and 1692f are necessarily fact-bound. Whether characterized as issues of fact or issues of mixed fact and law, district courts must act with great restraint when asked to rule in the context of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Undoubtedly, there will be occasions when a district court will be required to hold that no reasonable persons, however unsophisticated, could construe the wording of [a] communication in a manner that [would] violate the statutory provision. In most instances, however, a proper application of the rule will require that the plaintiff be given an opportunity to demonstrate that his allegations are supported by a factual basis responsive to the statutory standard.").

By the same token, an unsophisticated, unrepresented tenant might would likely fail to recognize the legal significance of the subsidy issue as it might bear on the number and nature of his/her defenses in the eviction action (*see* Complaint, ¶ 21). Such a tenant is unlikely to seek a correction of the record to establish the legal foundation for asserting these putative defenses, thus permitting the case to proceed with the defendant tenant -- and the court -- in ignorance of the fact that available defenses have been left unasserted.[9]

An unsophisticated tenant misled by the Defendants' "no subsidy" false statements, as described above, might well be confused about the validity or amount of his/her alleged debt, given the potential impact of subsidy-based defenses on that issue, and just as likely might be impeded in his/her ability to challenge the validity of the debt alleged. This is especially so given that the very purpose of requiring the information about subsidy in the form complaint is to enable the court to identify cases in which subsidy-based defenses may be available, to encourage tenants to seek counsel, and to avoid the entry of judgments that are contrary to law. The pleadings filed against the named Plaintiffs are illustrative: federal law prohibits converting water bills to unpaid "rent" in the manner attempted by the Defendants in those complaints. Had the Defendants been truthful in the complaints regarding subsidy status, the court -- even absent the representation of the named Plaintiffs by counsel -- would almost certainly have recognized the problem with the claims and refused to enter judgment on the basis of allegedly unpaid water bills, at least without further inquiry. The Defendants' false statements frustrate this process, to the clear detriment of the tenants' interest in asserting all available defenses. This is not the

---

9 As set forth in the Complaint, incorporation of the subsidy-status inquiries in the standard-form eviction complaint was for the purpose of eliciting information that would benefit not only the defendant tenant, but also the Court. Complaint, ¶ 20.

result of either a "bizarre or idiosyncratic interpretation" of the Defendants' misrepresentations or an "unreasonable misinterpretation" thereof.

These straightforward examples illustrate the unprincipled nature of the Defendants' attempt to brush aside or diminish the legal significance of the course of misconduct that they, as a matter of conscious strategy, chose to employ. The "least sophisticated consumer" standard of materiality was adopted to benefit consumers, not to serve as a shield for debt collectors and is an *objective* test. The fact that the named Plaintiffs were not themselves victimized in the manner described in no way undercuts the conclusion that the Defendants' false statements might well be material to the unsophisticated tenants the Defendants' clients typically seek to evict.[10]

## III. THE DEFENDANTS HAVE FAILED TO IDENTIFY ANY LEGAL BASIS FOR DISMISSAL OF THE PLAINTIFFS' CLAM ASSERTED UNDER FDCPA SECTION 1692f

Although Sections 1692e and 1692f of the FDCPA may clearly implicate overlapping bases for the imposition of liability in particular cases, they establish two separate foundations for claims under the statute, as a particular defendant's acts or omissions might constitute the type of "unfair or unconscionable means to collect or attempt to collect [a] debt" that is prohibited by Section 1692f, even if the defendant did not engage in "false, deceptive or misleading" conduct as contemplated by Section 1692e. While the Plaintiffs have asserted claims for relief under both sections of the FDCPA, the Defendants have responded only to the

10 Because the Defendants' misrepresentations are material from the standpoint of the "least sophisticated consumer" for the reasons explained, this is not, as Defendants have suggested, a situation in which their false statements would only tend to mislead the court. *See* Defendants' Mem. at 9-11. In any event, the Plaintiffs do not concede that misrepresentations set forth in filings directed solely or principally to the court are not actionable under the FDCPA. *See, e.g., Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 818 (8th Cir. 2012); *Sayyed v. Wolpolf & Abramson*, 485 F.3d 226, 229-32 (4th Cir. 2007); *Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 290 n.9 (S.D.N.Y. 2012); *Washington v. Roosen, Varchetti & Oliver, PLLC*, 894 F. Supp. 2d 1015, 1025 (W.D. Mich. 2012); *Penn v. Cumberland*, 883 F. Supp. 2d 581 (E.D. Va. 2012; *Midland Funding, LLC v. Brent*, 644 F. Supp. 2d 961, 970 (N.D. Ohio 2009).

Plaintiffs' Section 1692e claim. *See* Defendants' Mem. at 11 (stating that "for the reasons set forth above, the Plaintiffs cannot state a claim for violation of §§ 1692e or 1692f," but previously citing only Section 1692e "materiality" cases in support of that contention). Essentially, the Defendants have failed to respond to or argue for dismissal of the separate claim for relief asserted in the Plaintiffs' Complaint that is premised upon Section 1692f. *See* Complaint, ¶¶ 50-54.

An analogous case illustrates the applicability of Section 1692f's prohibition against the "use of unfair or unconscionable means to collect or attempt to collect a debt" to the facts alleged by the Plaintiffs in the case at bar.[11] In *McCullogh v. Johnson, Rodenburg & Lauinger, LLC*, 673 F.3d 939 (9th Cir. 2011), the Court of Appeals affirmed a lower court decision granting summary judgment to a plaintiff who filed an FDCPA claim against a debt collection law firm in which he contended that, among other wrongful acts, the law firm's service of a set of requests for admissions containing false statements in connection with the underlying collection action in which the plaintiff was *pro se* constituted an unfair or unconscionable means of seeking to collect the debt the plaintiff allegedly owed. *See* 637 F.3d at 952.

When the collection action was initially filed, the plaintiff, as a *pro se* defendant, promptly advised the law firm that the action was time-barred, and information contained in the file provided to the firm by its client independently confirmed that the action was foreclosed by the applicable statute of limitations. The law firm nonetheless continued to prosecute the action

---

11 While the Plaintiffs do not contend that including false representations regarding the subsidy status of their rental properties in eviction pleadings, as the Defendants did here, falls within any of the eight specific examples of acts constituting "unfair or unconscionable" practices listed in Section 1692f, they note that the statutory provision, on its face, does not purport to be all-inclusive. *See McMillan*, 455 F.3d at 764 ("[A]s the statute states explicitly, the listing of eight specific violations was not intended to limit the applicability of the general prohibition of 'unfair or unconscionable' behavior. *See* 15 U.S.C. § 1692f.").

and, in the course of doing so, it served the plaintiff with requests for admissions essentially seeking to have the plaintiff admit that the action as not time-barred, among other knowingly false factual representations. In addition, the law firm failed to include an admonition that if the requests were not responded to within 30 days, they would be deemed admitted. *Id.* at 946.

Based on these circumstances, the federal district court held that the law firm's conduct violated Section 1692f as a matter of law, and the Ninth Circuit agreed, holding in pertinent part as follows:

> JRL's requests for admission asked McCullogh to admit facts that were not true: that he had never disputed the debt, that he had no defense, that every statement in JRL's complaint was true, and that he had actually made a payment on or about June 30, 2004 [thereby tolling the statute of limitations]. JRL had information in its possession that demonstrated the untruthfulness of the requested admissions.
>
> The requests for admission did not include an explanation that, under Montana Rule of Civil Procedure 36(a), the requests would be deemed admitted if McCullogh did not respond within thirty days. Because we consider the debt collector's conduct from the standpoint of the least sophisticated debtor, we must conclude that the service of requests for admission containing false information upon a *pro se* defendant without an explanation that the requests would be deemed admitted after thirty days constitutes "unfair or unconscionable" . . . means to collect a debt. Here, JPL effectively requested that McCullogh admit JRL's entire case against him and concede all defenses. The least sophisticated debtor cannot be expected to anticipate that a response within thirty days was required to prevent the court from deeming the requests admitted. The district court properly granted summary judgment on this claim.

*Id.* at 952.

The analytical parallel between *McCullogh* and the instant case is clear. In *McCullogh*, although the plaintiff himself clearly recognized the completely false nature of the contents of the law firm's requests for admissions and secured counsel after their service to assist him in preparing and providing timely denials (*see id.* at 946 ("McCullogh retained counsel and timely denied all of the requests.")), the courts, applying the objective "least sophisticated consumer" test, nevertheless had no trouble concluding -- as a matter of law -- that the law firm had engaged

in "unfair or unconscionable" conduct. So it is here. The Defendants' conscious misrepresentation of rental properties as not subsidized in hundreds of eviction complaints filed against low-income tenants that they know or have reason to know are generally unsophisticated in legal matters and unrepresented by counsel, under circumstances in which the false statement might prevent the tenants from exercising subsidy-based defenses to which they are legally entitled, establishes the basis for a claim under Section 1692f that is, at a minimum, plausible for purposes of Fed. R. Civ. P. 12(b)(6). Defendants have made no attempt to show otherwise and could not do so in any event.

## IV. THE BETTER-REASONED AUTHORITIES SUPPORT THE CONCLUSION THAT PRIVATE ACTIONS UNDER THE FDCPA MAY SEEK AND OBTAIN DECLARATORY AND INJUNCTIVE RELIEF AS WELL AS DAMAGES

Finally, the Defendants, invoking the express language of 15 U.S.C. § 1692k, which establishes a private right of action under the FDCPA, and two cases construing that provision, contend that "equitable relief is not available under the FDCPA to private parties." Defendants' Mem. at 11. On this basis, they assert that the Plaintiffs' claims for declaratory and injunctive relief "should be stricken and dismissed" even if their Motion is otherwise unsuccessful. *Id.* at 12.

Plaintiffs do not take issue with the fact that Section 1692k references only damages and attorneys' fees as the specific forms of relief that may be obtained *via* the successful prosecution of an FDCPA action by a private party. Moreover, the Plaintiffs acknowledge that the cases cited by the Defendants -- *Weiss v. Regal Collections*, 3985 F.3d 337 (3d Cir. 2004), and *Strong v. National Credit Mgmt. Co.*, 600 F. Supp. 46 (E.D. Ark. 1984) -- hold, as the Defendants have indicated, that neither declaratory nor injunctive relief can be sought or obtained in a private action brought pursuant to Section 1692k of the FDCPA.

Both the *Weiss* and *Strong* cases turn principally upon the distinction between the express language of Section 1692k which, as noted above, concededly references only damages and attorneys' fees as available forms of relief, and Section 1692l, addressing administrative enforcement of the FDCPA by the Federal Trade Commission and authorizing the FTC to seek and obtain declaratory and injunctive relief by providing that "[a]ll of the functions and powers of the Commission under the Federal Trade Commission Act are available to the Commission to enforce compliance by any person with this title . . . including the power to enforce the provisions of this title in the same manner as if the violation had been a violation of a[n] [FTC] trade regulation rule." *See Weiss,* 385 F.3d at 342 ("Because the statute explicitly provides declaratory and equitable relief only through action by the [FTC], we believe the different penalty structure demonstrates Congress's intent to preclude equitable relief in private actions.").

As an initial matter, it is by no means clear that the weight of authority on this issue falls on the side of denying declaratory and injunctive relief in private actions under the FDCPA, as Defendants suggest. Indeed, numerous federal courts have recognized that declaratory relief may permissibly be sought and obtained in FDCPA cases brought by private actors, even if claims for injunctive relief have been rejected. *See, e.g., Hunt v. Check Recovery Systems, Inc.*, 241 F.R.D. 505, 513 (N.D. Cal. 2007) (granting certification of an FDCPA class action under Fed. R. Civ. P. 23(b)(2) over the defendant's objection that the FDCPA does not permit either injunctive or declaratory relief; "In the instant case, a declaratory judgment would settle the issue of the legality of Defendant's behavior with respect to the entire class. Given that the very purpose of class actions is to promote judicial efficiency and economy, the Court finds that Plaintiffs' request for declaratory judgment [is] appropriate." (citing numerous consistent authorities)), *modified on other grounds*, No. CO5-04993 MJJ, 2007 WL 2220972 (N.D. Cal.

Aug. 1, 2007), *aff'd sub nom. Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137 (9th Cir 2009); *accord Mann v. Acclaim Financial Servs., Inc.*, 232 F.R.D. 278, 285-86 (S.D. Ohio 2003); *Carroll v. United Compucred Collections, Inc.*, No. 1-99-0152, 2002 WL 32936511, at *16 (M.D. Tenn. Nov. 15, 2002), *report and recommendation adopted in pertinent part*, No. 1-99-0152, 2003 WL 1903266 (M.D. Tenn. March 31, 2003), *aff'd*, 399 F.3d 620 (6th Cir. 2005); *Young v. Meyer & Njus, P.A.*, 183 F.R.D. 231, 234 (N.D. Ill. 1998); *Ballard v. Equifax Check Servs., Inc.*, 27 F. Supp. 2d 1201, 1204 & n.4 (E.D. Cal. 1988); *Mann v. GC Servs. Ltd. Partnership*, 162 F.R.D. 313, 320 (N.D. Ill. 1995).[12]

The rulings of the courts permitting the pursuit of declaratory relief in private actions under the FDCPA are fully consistent with the fundamental principle that federal courts are invested with broad inherent powers to fashion equitable relief in cases properly within their subject-matter jurisdiction. Thus, as the Court of Appeals stated In *Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001);

> "[I]f a right of action exists to enforce a federal right and Congress is silent on the question of remedies, a federal court may order *any appropriate relief*." *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 69 (1992) (emphasis added). As this court has concluded in other contexts, "courts are presumed to possess the full range of remedial powers -- legal as well as equitable -- unless Congress has expressly restricted their exercise." *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 749 (D.C. Cir. 1995). . . .
>
> * * *
>
> "Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971).

---

12 Without addressing the threshold statutory authorization issue as to the scope of permissible relief, at least two additional courts have certified private FDCPA actions to proceed as class actions premised upon claims for both declaratory *and* injunctive relief. *See Hansen v. Ticket Track, Inc.*, 213 F.R.D. 412, 416 (W.D. Wash. 2003); *Foster v. D.B.S. Collection Agency*, No. 01-CV-514, 2002 WL 484500, at *6, *9 (S.D. Ohio March 26, 2002).

*Id.* at 1108 (citations omitted); *see also U.S. v. Philip Morris USA, Inc.*, Civ. Action No. 99-2496, 2014 WL 2505683, at *2 (D.D.C. June 2, 2014) ("It has long been established that District Court judges may act 'well within [their] broad equitable powers in ordering specific relief' to remedy the 'legal transgressions' of defendants." (*citing Cobell*, 240 F.3d at 1108)).

Here, nothing set forth by Congress in 15 U.S.C. § 1692k, the private right of action provision, expressly precludes the granting of equitable relief *in addition to* the damages and attorneys' fees that are expressly referenced. At best, Section 1692k is silent on this subject; as a result, this Court, in the exercise of its unquestioned jurisdiction, retains the discretion to award injunctive and/or declaratory relief to the extent the Plaintiffs ultimately establish their entitlement thereto.[13]

---

13 The courts holding to the contrary, such as in the *Weiss* and *Strong* cases cited by the Defendants, at most have *inferred* from the recognition of the FTC's right to pursue equitable relief in Section 1692l and the absence of language to the same effect in Section 1692k, that private parties are not entitled to seek equitable relief in FDCPA actions. This is, in essence, an invocation of the canon of statutory construction: *Expressio unius est exclusio alterius, i.e.*, the expression of one thing is the exclusion of another. However, as the Supreme Court recently noted, in the context of an FDCPA case (albeit one involving an unrelated issue), "[w]e have long held that the *expressio unius* canon does not apply 'unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it.' *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003)." *Marx v. General Revenue Corp.*, __ U.S. __ 133, S. Ct. 1166, 1175 (2013).

Here, neither the Defendants themselves nor the case authorities they cite reference any conscious judgment on the part of Congress to prevent private parties from seeking injunctive or declaratory relief in actions under the FDCPA, as reflected in the legislative history of the Act or otherwise. Nor is there any logical reason for Congress to have sought to affirmatively prevent the federal courts from having the option, in their discretion, to declare the rights of the parties or enjoin plainly wrongful conduct in FDCPA cases.

## CONCLUSION

For all of the foregoing reasons, the Defendants' Motion to Dismiss should be denied in its entirety.

**DATED:** February 27, 2015

Respectfully submitted,

Chinh Q. Le (D.C. Bar No. 1007037)
(cle@legalaiddc.org)
Heather M. Latino (D.C. Bar No. 1007691)
(hlatino@legalaiddc.org)
(pursuant to LCvR83.2(g))
LEGAL AID SOCIETY OF THE DISTRICT OF COLUMBIA
1331 H Street, N.W.
Suite 350
Washington, D.C. 20005
(202) 628-1161

and

Theodore A. Howard (D.C. Bar No. 366984)
(thoward@wileyrein.com)
Mary E. Borja (D.C. Bar No. 442462)
mborja@wileyrein.com
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
(202) 719-7000

By: /s/ Theodore A. Howard
Attorneys for Plaintiffs

# EXHIBIT A

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION
LANDLORD AND TENANT BRANCH

| | | |
|---|---|---|
| CAPITOL GATEWAY,<br><br>*Plaintiff,*<br><br>vs.<br><br>NATASHA LIPSCOMB,<br><br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case Number: 2013 LTB 31396<br><br>Calendar 5 – Judge Motley<br>Next Date: Scheduling conf., 2/7/14 |

RECEIVED LANDLORD & TENANT FEB - 4 2014

**DEFENDANT'S AMENDED ANSWER**

Defendant Natasha Lipscomb (hereinafter "Defendant"), through counsel, answers the Complaint herein as follows:

1. Defendant denies that Plaintiff is entitled to possession of the premises in question. She admits their location in the District of Columbia, admits the premises are in Defendant's possession, and admits holding them as a tenant, but denies holding them without right.

2. Defendant denies that Plaintiff is the owner, landlord, or landlord's authorized agent of the subject premises and demands strict proof of the same.

3. Defendant denies being in default in the payment of rent in the sum alleged in the Complaint for the reasons stated herein.

4. Defendant asserts that anything not specifically admitted herein is denied.

5. Defendant asserts that, contrary to the representation in the Complaint, the premises is in fact subsidized.

6. Defendant reserves the right to demand an evidentiary hearing, including trial by jury, regarding the disbursement of any sums deposited into the court registry pendente lite in this case.

FIRST DEFENSE

7. Plaintiff has failed to state a claim upon which relief can be granted.

SECOND DEFENSE

8. Plaintiff may not recover possession because Plaintiff failed to effect service of process in accordance with D.C. law.

THIRD DEFENSE

9. Plaintiff may not recover possession because Plaintiff failed properly to serve a legally sufficient Complaint.

FOURTH DEFENSE

10. Plaintiff's claim for rent and/or water charges is barred due to the fact that, upon information and belief, Plaintiff has failed to comply with the rules, regulations, and policies of the U.S. Department of Housing and Urban Development and of the D.C. Housing Authority governing Defendant's rental subsidy.

FIFTH DEFENSE

11. Defendant denies owing the full sum of water charges assessed by the Plaintiff.

SIXTH DEFENSE

12. Defendant denies owing the full sum of water charges assessed by the Plaintiff because Plaintiff has failed to give her proper notice of the applicable charges.

## SEVENTH DEFENSE

13. Defendant denies that the water charges assessed to her by the Plaintiff accurately reflect her household's actual water usage and demands strict proof of the same.

## EIGHTH DEFENSE

14. Plaintiff's claim for rent is barred due to the fact that it is based on a lease that is void due to substantial violations of the Housing Regulations of the District of Columbia that existed at or following the inception of the tenancy, which Defendant did not cause and of which Plaintiff knew or should have known, that caused the premises to be unsafe or unsanitary within the meaning of 14 D.C.M.R. §§ 302.1 and 302.2. Such violations constitute a breach of the warranty of habitability, implied into all leases by 14 D.C.M.R. § 301.1, including but not limited to:

a. Lack of working air-conditioning;
b. All deficiencies noted in the D.C. Housing Authority inspection reports dated November 5, 2012, and December 3, 2012.

## NINTH DEFENSE

15. Plaintiff's claim for unpaid water bills is barred by the doctrine of estoppel.

## TENTH DEFENSE

16. Plaintiff's claim for unpaid water bills is barred by waiver.

## ELEVENTH DEFENSE

17. Plaintiff's claim for unpaid water bills is barred by the doctrine of unclean hands.

## TWELFTH DEFENSE

17. Plaintiff has overcharged rent to Defendant in violation of the rules and regulations governing Defendant's subsidized housing program.

*WHEREFORE,* Defendant prays that this Court:

1. Dismiss the Complaint with prejudice, and enter judgment for Defendant, with all costs of this action to be borne by Plaintiff; and

2. Grant such other relief as is proper.

Respectfully submitted,

Julie H. Becker, D.C. Bar #471080
Beth Mellen Harrison, D.C. Bar #497363
Legal Aid Society of D.C.
1331 H Street, N.W., #350
Washington, DC 20005
(202) 628-1161
Fax: (202) 727-2132
jbecker@legalaiddc.org
bharrison@legalaiddc.org

*Counsel for Defendant*

CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the foregoing Amended Answer to be delivered by first-class mail to Mark Raddatz and Ed Pugh, Counsel for Plaintiff, 1212 New York Avenue NW, Suite 850, Washington, D.C., 20005, this 4th day of February, 2014.

Julie Becker

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATASHA LIPSCOMB, *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>THE RADDATZ LAW FIRM, P.L.L.C., *et al.*<br><br>*Defendants*. | ) | Case No. 14-cv-1958 JEB<br>Judge Boasberg |

## ORDER

This matter is before the Court for decision on the Motion of Defendants The Raddatz Law Firm, P.L.L.C., Mark D. Raddatz, Esq. and Edward L. Pugh II, Esq. ("Defendants") to Dismiss the Plaintiffs' Complaint for Declaratory and Injunctive Relief and Damages herein.

The Court having considered the Defendants' Motion and supporting Memorandum, the Plaintiffs' Memorandum of Points and Authorities in Opposition thereto, the Defendants' Reply Memorandum, and the arguments of counsel; and the Court being otherwise fully advised in the premises;

**IT IS HEREBY ORDERED** that the Defendants' Motion to Dismiss should be and the same is hereby **DENIED**.

The parties, by counsel, shall appear before the Court for a Status Conference on _________, 2015, at which time the Court shall, *inter alia*, establish a briefing schedule for the Plaintiffs' Motion for Class Certification.

**SO ORDERED** this __ day of __________ 2015.

_______________________________
The Hon. James Boasberg
United States District Judge

Copies to: Counsel of Record

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of February 2015, a true and correct copy of the Plaintiffs' Memorandum of Points and Authorities in Opposition to The Defendants' Motion to Dismiss, with supporting exhibit and proposed Order, was served via electronic mail upon the following:

Aaron L. Handleman, Esq.
Laura M.K. Hassler, Esq.
ECCLESTON & WOLF, P.C.
1629 K Street, N.W.
Suite 260
Washington, D.C. 20006
handleman@ewdc.com
hassle@ewdc.com

Attorneys for Defendants

Theodore A. Howard

Theodore A. Howard