**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

NATASHA LIPSCOMB, *et al.*,

    **Plaintiffs,**

      v.

THE RADDATZ LAW FIRM, P.L.L.C., *et al.*,

    **Defendants.**

                                      Civil Action No. 14-1958 (JEB)

---

## <u>MEMORANDUM OPINION</u>

The Landlord and Tenant Branch of the Civil Division in the District of Columbia's Superior Court is a unique animal. Housed in a building separate from the main courthouse, the Branch has its own rules and procedures. It is, first and foremost, a place landlords go to seek possession of their property – typically on the ground that their tenants have violated lease provisions, such as by failing to pay rent. In this case, a number of tenants are attempting to turn the tables, claiming that their landlord's law firm has played fast and loose with the L&T Branch rules.

More specifically, Plaintiffs Natasha Lipscomb, Kimberly McLaughlin, Margaret O'Brien, and Felicia Pate bring this class-action suit against The Raddatz Law Firm, P.L.L.C., and its principals, Mark R. Raddatz and Edward L. Pugh II, for allegedly improper debt-collection practices. They contend that Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.*, by making false statements in eviction suits that the firm filed in the L&T Branch. Defendants now move to dismiss. They argue, *inter alia*, that the FDCPA is not meant to govern the filing of eviction complaints in state court and that, in any event, their

1

misrepresentations could not have misled consumers.  Because the Court ultimately concludes that such actions <u>can</u> trigger the Act's protections and that Plaintiffs have adequately stated a claim, it will deny the Motion.

## I.      Background

When a tenant residing in the District fails to abide by certain lease provisions, such as the requirement to pay rent, a landlord may file an action for possession – *i.e.*, an eviction complaint – in the L&T Branch of Superior Court.  Prior to filing such a suit, the landlord must serve the tenant with a notice to quit, unless the tenant has waived her right to such notice.  <u>See</u> <u>Grimes v. Newsome</u>, 780 A.2d 1119, 1121 (D.C. 2001).  If, after receiving notice, the tenant fails to remedy the problem, the landlord may initiate an eviction proceeding by "delivering to the Clerk [of the L&T Branch] a verified Complaint for Possession of Real Property."  <u>See</u> SCR-LT R.3(a).  The complaint may, in addition to seeking a judgment for possession, also include "a claim for a money judgment based on rent in arrears."  SCR-LT R. 3(b); <u>see also</u> D.C. Code § 42-3211.  Any such complaint must "be made 'under oath verified by the person aggrieved by the detention, or by his agent or attorney having knowledge of the facts.'"  Comment, SCR-LT R. 3 (quoting D.C. Code § 16-1501).

According to Plaintiffs' Complaint, which is presumed true at this stage, Defendants primarily focus their legal practice on representing commercial and residential landlords in landlord/tenant disputes.  <u>See</u> Compl., ¶ 12.  In this vein, in November 2013, they filed eviction complaints against each of the named Plaintiffs in the L&T Branch on behalf of their landlord, Capitol Gateway.  <u>See</u> <u>id.</u>, ¶¶ 23-26.  The Verified Complaints for Possession of Real Property indicated that Capitol Gateway was seeking to both repossess the rental properties and recover back rent allegedly owed.  <u>See</u> Compl., Exh. 1 (Lipscomb Summons and Complaint); Exh. 2

(McLaughlin Summons and Complaint); Exh. 3 (O'Brien Summons and Complaint); Exh. 4

(Pate Summons and Complaint).  In support, Defendants swore in each of the complaints that

Plaintiffs had failed to pay certain fees for water, defined as "rent" under their leases.  See

Lipscomb Compl.; McLaughlin Compl.; O'Brien Compl.; Pate Compl.

Although each Plaintiff "plainly reside[d]" in a unit that was subsidized by the U.S.

Department of Housing and Urban Development and the D.C. Housing Authority, the complaints

averred that Plaintiffs' rents were not subsidized by the federal or local government.  See

Compl., ¶¶ 23-26.  For example, the complaint filed against Lipscomb stated that "[Capitol

Gateway] seeks other fees of $2,593.00 for water . . . , defined as rent under paragraph no. 7 of

the lease . . . for this property, which is not subsidized and is exempt from rent control."

Lipscomb Compl. (emphasis added).  In response to Question 4 of the complaint, which requires

a landlord (or its counsel) to check off whether a tenant's rent is subsidized by the federal or

local government, Defendants again indicated that Lipscomb's was not.  See id.  The complaints

filed against McLaughlin, O'Brien, and Pate contained similar averments and incorrect check-

offs.  See McLaughlin Compl.; O'Brien Compl.; Pate Compl.

According to Plaintiffs, the manner in which landlords (or their counsel) represent the

subsidized status of rental properties "may be of critical importance."  Compl., ¶ 20.  "[T]enants

residing in subsidized rental properties are entitled to assert certain statutory and/or regulatory

defenses to repossession that are not available to tenants residing in non-subsidized rental

housing."  Id.  Where a tenant is unrepresented by counsel, properly indicating the subsidized

status of a rental property may thus alert the presiding judge "to the need to assure that the *pro se*

tenant is appropriately advised of his/her rights."  Id.  Even "where the tenant does have legal

representation, an affirmative answer to Question No. 4 alerts counsel to the availability of

special defenses relating to subsidized tenants that are simply inapplicable in non-subsidized rental housing." Id., ¶ 21.  It is Plaintiffs' belief that Defendants incorrectly stated that their rents were not subsidized in order to "mislead the tenants for the unilateral benefit of the Defendants' landlord clients, and to avoid alerting the tribunal to the existence of special defenses . . . ." Id., ¶ 2.

Plaintiffs, however, "each had the good fortune to obtain legal representation" from attorneys employed by the Legal Aid Society of the District of Columbia, and their "cases were resolved without either an adverse judgment or loss of the residence." Id., ¶ 27.  Yet few may be so lucky.  Tenants are represented by counsel in only about 5-10% of the cases filed in the L&T Branch, id., ¶ 18, and Defendants' conduct appears to be widespread.  According to "[a]n extensive pre-suit factual investigation," they have filed hundreds, if not thousands, of similar complaints in the L&T Branch that "falsely characterize . . . rental properties . . . as 'not subsidized and . . . exempt from rent control[.]'" Id., ¶¶ 1-2.  The investigation found, for instance, that from November 2013 through October 2014, they filed "roughly 100 actions" on behalf of three of the firm's landlord clients that appear to have misrepresented the subsidy status of the subject properties.  See id., ¶ 32.  Specifically, although the vast majority of those landlords' units are subsidized by HUD and DCHA and although the complaints listed vastly below-market rents, "only four (4) of the Complaints indicated that the rental property at issue was subsidized." Id., ¶¶ 29-33.  In the eleven months preceding that period, the firm filed 118 eviction complaints on behalf of the same landlords, and not a single one indicated that the rental unit at issue was subsidized.  See id., ¶ 34.

The named Plaintiffs ultimately filed this putative class-action suit on November 19, 2014, alleging that Defendants' conduct has violated, and continues to violate, the FDCPA.

4

More particularly, Plaintiffs contend that Defendants have violated 15 U.S.C. § 1692e, by using

"false, deceptive or misleading representation[s] or means in connection with the collection of" a

debt, and 15 U.S.C. § 1692f, by using "unfair or unconscionable means to collect or attempt to

collect" a debt.  In pursuing these claims, they seek to represent a class comprised of "all

individuals residing in federally and/or locally subsidized rental housing units within the District

of Columbia which are owned by landlords represented by the Raddatz Firm and who have been,

are now, or will in the future be subject to legal proceedings filed in the L/T Branch of the D.C.

Superior Court in which the Raddatz Firm misrepresents the subsidy status of their rental

properties."  Id., ¶ 36.  On behalf of the class, they seek to obtain declaratory and injunctive

relief, as well as statutory damages.  Defendants now move to dismiss.

## II.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a claim for relief

when the complaint "fail[s] to state a claim upon which relief can be granted."  In evaluating a

motion to dismiss, the Court must "treat the complaint's factual allegations as true and must

grant plaintiff the benefit of all inferences that can be derived from the facts alleged."  Sparrow

v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation and internal quotation

marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A court need not accept as

true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported

by the facts set forth in the complaint.  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006)

(quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Although "detailed factual allegations"

are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S.

544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to

state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678 (internal quotation

omitted).  A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," but the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555-56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

## III.   Analysis

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  To that end, "[t]he Act regulates interactions between consumer debtors and debt collectors." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 577 (2010) (alterations, quotation marks, and citation omitted).  Among other things, it prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, and the use of "unfair or unconscionable means to collect or attempt to collect any debt." Id. § 1692f.  Those who violate these proscriptions may be subject to administrative-enforcement actions, see id. § 1692l(a), as well as private suits to recover actual and statutory damages. See id. § 1692k.

A private plaintiff seeking to hold a person liable under Section 1692e or Section 1692f must establish that: (1) the defendant is a "debt collector"; (2) who took an action "in connection with the collection of a[] debt"; and (3) the action violated the substantive proscriptions in those provisions. See, e.g., Gburek v. Litton Loan Servicing LP, 614 F.3d 380, 384 (7th Cir. 2010); Muldrow v. EMC Mortg. Corp., 657 F. Supp. 2d 171, 174-75 (D.D.C. 2009).  In the present case, Defendants do not appear to dispute that they are "debt collectors" within the meaning of

the statute.  Rather, they argue that their filing of eviction complaints is not an action taken in connection with the collection of a debt.  They also contend that even if such activities fall within the Act's purview, the false statements in the complaints are not actionable under either Section 1692e or Section 1692f because they could not have misled consumers.  Finally, they suggest that even if Plaintiffs have stated a viable FDCPA claim, the Court should nonetheless dismiss their claims for injunctive relief because such relief is not authorized in private causes of action. The Court will address each of these issues in turn, bearing in mind that the FDCPA's provisions are to be broadly construed.  See, e.g., Johnson v. Riddle, 305 F.3d 1107, 1117 (10th Cir. 2002) ("Because the FDCPA . . . is a remedial statute, it should be construed liberally in favor of the consumer.") (citations omitted); Kaymark v. Bank of America, N.A., 783 F.3d 168, 174 (3d Cir. 2015) (same).

A.  Applicability of the FDCPA

Defendants' primary argument in support of dismissal is that the FDCPA does not cover the activities at issue here.  In their view, "[a]n eviction proceeding is an action filed by the owner of a rental property for the purpose of retaking possession of that property" – "[i]t is not a collection of a consumer debt."  Mot. at 4.  They argue, additionally, that even if certain acts related to pursuing security or property interests are covered by the Act, it should not apply to formal legal pleadings, especially where a "strict, regulated, and inherently localized process," such as D.C.'s eviction procedure, is already in place to protect consumers.  See id. at 6-7.

These are both matters of first impression in this circuit.  The Court will consider each separately, relying on the statutory text and caselaw from other circuits to inform its decision.

1.  *Application to Eviction Proceedings*

In assessing whether the L&T filings were submitted in connection with debt collection, the Court must determine (1) if there were "debts" and (2) if the eviction complaints were filed in order to collect on those debts.  Although the parties ignore the text of the statute, that is where the Court begins its analysis.  See Hughey v. United States, 495 U.S. 411, 415 (1990).

The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5). This statutory language would clearly seem to encompass Plaintiffs' unpaid "rents," including overdue fees for water service.  Such amounts, after all, constitute obligations to pay money, and the subjects of the relevant transactions – *i.e.*, the rental units and/or water service – were primarily used for personal, family, or household purposes.  See, e.g., Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227, 232-33 (3d Cir. 2005) (fee for homeowner's water consumption was "debt" within meaning of Act).

In their Motion, Defendants rather offhandedly suggest that a lease transaction may not create a consumer "debt" because it "does not involve an extension of credit."  Mot. at 6. Although Defendants state that "the Circuits are . . . split on whether an extension of credit is required for a transaction to fall within the FDCPA," they only cite to a single district-court case from Colorado in support.  See id. (citing Cook v. Hamrick, 278 F. Supp. 2d 1202, 1204-05 (D. Colo. 2003)).

This is likely because the great weight of authority stands against them.  A majority of circuits has held that an extension of credit is not required for an obligation to constitute a "debt"

under the Act.  See Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 401 (3d Cir. 2000); Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322 (7th Cir. 1997); Romea v. Heiberger & Assocs., 163 F.3d 111, 115 (2d Cir. 1998); Duffy v. Landberg, 133 F.3d 1120, 1123 (8th Cir. 1998); Snow v. Jesse L. Riddle, P.C., 143 F.3d 1350, 1353 (10th Cir. 1998); Charles v. Lundgren & Assocs., P.C., 119 F.3d 739, 740 (9th Cir. 1997); Brown v. Budget Rent-A-Car Systems, Inc., 119 F.3d 922, 924 (11th Cir. 1997).  Even the Third Circuit, whose decision in Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1167 (3d Cir. 1987), was cited by Cook as establishing a circuit split on the issue, has since disavowed its earlier statement regarding an extension-of-credit requirement as mere *dicta*, and has held that "[n]o 'offer or extension of credit' is required."  Pollice, 225 F.3d at 401.

In reaching their consensus on this issue, courts have largely followed the Seventh Circuit's reasoning in Bass.  The defendant law firm there had argued that the FDCPA did not apply to efforts to collect on dishonored checks because the underlying transactions did not involve extensions of credit.  In rejecting the law firm's argument, the court noted a "complete lack of textual support in the Act" for its position.  There was simply "no language in the Act's definition of 'debt' (or any other section of the Act) that mentions, let alone requires, that the debt arise from an extension of credit."  Bass, 111 F.3d at 1325.  There was, moreover, no ambiguity in the statute's definition of the term "debt."  Id.  Even if there had been, the Act's legislative history did not support limiting its scope in that fashion.  "Early versions of the Act" had, for instance, "clearly included a credit extension requirement in defining 'debt,'" but that "restrictive language was deleted from later drafts, and no reference to 'credit' was ever re-inserted in the definition."  Id. at 1327.  Finding this reasoning persuasive, the Court agrees that

it is immaterial whether the transactions at issue here involved extensions of credit – even though it is at least arguable that water service could so qualify.

Thus satisfied that Plaintiffs' "back rents" were "debts," the Court proceeds to the second question: whether the eviction complaints were filed in connection with the <u>collection</u> of those debts. The statute does not define what it means to "collect" or "attempt to collect" a debt. The Supreme Court has stated, however, in the context of interpreting the statute's definition of the term "debt collector," that "a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts." <u>Heintz v. Jenkins</u>, 514 U.S. 291, 294 (1995). The Court also quoted Black's Law Dictionary for the proposition that "[t]o collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings." <u>Id.</u> (quoting Black's Law Dictionary 263 (6th ed. 1990)) (internal quotation marks omitted).

It seems clear that Defendants filed the eviction complaints against the named Plaintiffs, at least in part, to obtain payments on their debts. Indeed, although complaints in the L&T Branch must include a claim for possession, this in no way precludes them from serving the dual purpose of also seeking judgments on tenants' debts, <u>see</u> SCR-LT R. 3(b), and each of the complaints at issue here sought a money judgment for amounts allegedly owed. <u>See</u> Lipscomb Compl. (requesting money judgment of $2,593); McLaughlin Compl. (requesting money judgment of $5,064); O'Brien Compl. (requesting money judgment of $1,263); Pate Compl. (requesting money judgment of $2,593). Obtaining such judgments would have enabled Defendants to recover the sums through court-authorized procedures, such as garnishing wages.

The conclusion that the FDCPA applies where eviction proceedings include an attempt to recover back rent finds support in the Second Circuit's decision in <u>Romea</u>. <u>See</u> 163 F.3d 111.

The court there held that an eviction notice could give rise to an FDCPA violation.  It first determined that back rent is a "debt" within the meaning of the statute.  See id. at 115.  It then concluded that the eviction notice was a "communication" sent in connection with the collection of that debt.  In so doing, the court acknowledged that the notice was a "statutory condition precedent to commencing a summary eviction proceeding that is possessory in nature."  Id. at 116.  But such purpose, it explained, was not "mutually exclusive with debt collection."  Id. Indeed, the court believed that "[t]he facts surrounding an Article 7 summary proceeding prove[d] nothing about whether the notice that [the plaintiff] received from [the defendant] was or was not a 'communication' sent 'in connection with the collection of any debt.'"  Id. (quoting 15 U.S.C. § 1692e (1994)).  Rather, whatever else it may have been, it "was undeniably a 'communication' as defined by the FDCPA in that it conveyed 'information regarding a debt' to another person."  Id. (quoting 15 U.S.C. § 1692a(2)).  The court also noted that the defendant had not denied "that its aim in sending the letter was at least in part to induce [the plaintiff] to pay the back rent she allegedly owed."  Id.  "As a result," it concluded, "the fact that the letter also served as a prerequisite to commencement of the Article 7 [eviction] process is wholly irrelevant to the requirements and applicability of the FDCPA."  Id.

Here, as in Romea, it is irrelevant that Defendants filed the eviction complaints to regain possession of Plaintiffs' rental properties.  The pertinent question is whether they also sought to collect on Plaintiffs' debts.  It is clear from the face of the complaints that they did.  See, e.g., Lipscomb Compl. (stating that in addition to "seek[ing] possession of property located at 228 58th Street, N.E., Washington, D.C.," Defendants were "seek[ing] other fees of $2,593.00 for water").

Defendants nonetheless rejoin that cases considering the FDCPA's application to foreclosure proceedings aid them.  According to their research, "[t]he majority of courts who have considered the question have concluded that 'foreclosing on a mortgage does not qualify as debt collection activity for purposes of the FDCPA, . . . due to the understanding that foreclosure proceedings instead qualify as enforcing a security interest."  Mot. at 4 (quoting Derisme v. Hunt Leibert Jacobson P.C., 880 F. Supp. 2d 339, 363 (D. Conn. 2012)).  They suggest that the same result should obtain here.

Notwithstanding the immense amount of ink spilled by Defendants expounding on this point, they never clearly articulate why cases addressing foreclosure are relevant to a court's decision on whether eviction proceedings are covered.  To the extent some analogy can be made, moreover, such cases do not in fact aid Defendants.  While they may be right that a number of district courts have held that the FDCPA is generally inapplicable to foreclosures because they pertain to the enforcement of security interests, see Glazer, 704 F.3d at 460 ("The view adopted by a majority of district courts . . . is that mortgage foreclosure is not debt collection."), many of those courts have also held that "if a money judgment is sought against the debtor in connection with the foreclosure, . . . there has been debt collection, because there [has been] an attempt to collect money."  Id.  Even the district court in Derisme, on which Defendants rely, acknowledged, "[W]here there is an attempt to collect money in addition to the enforcement of a security interest, the . . . provisions of the FDCPA might apply to the conduct related to the collection of money."  880 F. Supp. 2d at 364; see also, e.g., Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1217-18 (11th Cir. 2012) ("A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest.  A debt is still a 'debt' even if it is secured.").  In the current

situation, of course, Defendants' L&T complaints did seek to collect money for alleged back rent.

In sum, the Court sees no basis for excluding Defendants' conduct from coverage because it involved attempts to regain possession of the rental properties.  Whatever else they may have been seeking, they were clearly attempting to collect money that Plaintiffs allegedly owed.  See also, e.g., O'Connor v. Nantucket Bank, 992 F. Supp. 2d 24, 33 (D. Mass. 2014) (observing that "[a] synthesis of the existing cases that address the question suggests that an eviction action can implicate the FDCPA, particularly where the eviction action includes some demand for payment tied to the property at issue (e.g. a utility bill, or damages for unpaid rent)" and holding that plaintiffs stated a claim for a false statement in an eviction complaint about the size of their debt).

### 2. *Application to Formal Pleadings*

In their Motion, Defendants attempt to distinguish this case from Romea and certain foreclosure cases that found the FDCPA applicable on the ground that those involved pre-suit notices, as opposed to formal pleadings filed in state court.  The line they seem to draw is confusing, as they appear to concede elsewhere that the Act applies to debt collectors' litigation activities.  See Mot. at 6-7.  In any event, they have failed to offer a cogent reason for courts to overlook deceptive and abusive practices solely because they involve the filing of formal complaints.

Indeed, the Supreme Court's decision in Heintz would seem to foreclose any argument that formal complaints are somehow exempt from the FDCPA.  The Court there was presented with the question of whether the Act applies to lawyers who attempt to collect debts through litigation.  See 514 U.S. at 292.  Answering that question in the affirmative, the Court found

"two rather strong reasons" for believing that it does.  Id. at 294.  First, the FDCPA's definition

of a "debt collector" includes those "who 'regularly collec[t] or attemp[t] to collect, directly or

indirectly, [consumer] debts owed or due or asserted to be owed or due another.'"  Id. (quoting

15 U.S.C. § 1692a(6)) (alterations in original).  The Court reasoned that, "[i]n ordinary English,

a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a

lawyer who regularly 'attempts' to 'collect' those consumer debts."  Id. (quoting 15 U.S.C. §

1692a(6)) (some alterations in original) (emphasis added).  It further observed that an earlier

version of the statute had included an "express exemption for lawyers," but that Congress had

later "repealed th[at] exemption in its entirety, without creating a narrower, litigation-related,

exemption to fill the void."  Id. at 294-95 (internal citations omitted).  In light of such a clear

manifestation of Congress's intent, the Court declined the defendant's invitation to "read the

statute as containing an implied exemption for those debt-collecting activities of lawyers that

consist of litigation . . . ."  Id. at 295.

 Relying on Heintz, circuit courts have widely recognized that litigation-related conduct,

including the filing of formal complaints, can give rise to claims under the Act.  See, e.g.,

Kaymark, 783 F.3d at 177 ("We conclude that a communication cannot be uniquely exempted

from the FDCPA because it is a formal pleading or, in particular, a complaint.  This principle is

widely accepted by our sister Circuits.") (citations omitted); Currier v. First Resolution Inv.

Corp., 762 F.3d 529, 535 (6th Cir. 2014) ("The fact that the threat appears in a lawsuit or other

court filing does not diminish the threatening nature of the communication for purposes of the

FDCPA."); Gearing v. Check Brokerage Corp., 233 F.3d 469, 472-73 (7th Cir. 2000) (finding

statements in state-court complaint violated Section 1692e); Donohue v. Quick Collect, Inc., 592

F.3d 1027, 1031-32 (9th Cir. 2010) ("We . . . conclude that a complaint served directly on a

consumer to facilitate debt-collection efforts is a communication subject to the requirements of §§ 1692e and 1692f."); James v. Wadas, 724 F.3d 1312, 1316 (10th Cir. 2013) ("[T]he FDCPA 'applies to the litigating activities of lawyers,' which, as other circuits have held, may include the service upon a debtor of a complaint to facilitate debt collection efforts . . . .") (quoting Heintz, 514 U.S. at 294, and citing Donohue, 592 F.3d at 1031-32).

The Court also notes, as further evidence of Congress's intent to regulate litigation-related activities, that after Heintz it

> twice amended the statute and exempted "formal pleading[s] made in connection with a legal action" from 15 U.S.C. § 1692e(11), and "communication[s] in the form of [] formal pleading[s]" from § 1692g(d), two provisions not here at issue.  If Congress intended that all conduct in the course of formal pleadings be exempt from the FDCPA, then these express exemptions would be superfluous . . . .

Kaymark, 783 F.3d at 177.  Based on these amendments, some circuits have even concluded that, aside from the provisions in §§ 1692e(11) and 1692g(d), the FDCPA applies to "all litigation activities, including formal pleadings."  Id. (quoting Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 231 (4th Cir. 2007)).  The Court need not sweep so broadly here, as the only issue before it is whether formal complaints are covered.  With respect to these, the statutory text, legislative history, and clear weight of authority all support the Court's determination that they are.

Not yet ready to concede defeat, Defendants last contend that it is appropriate to exempt L&T complaints from the Act's reach because of the strong protections already afforded consumers in those proceedings.  The Court cannot agree.  It notes, first, that Defendants' assertion of such an argument is rather bold.  The thrust of Plaintiffs' Complaint, after all, is that Defendants attempted to evade certain protections by falsely representing the subsidized status of the tenants' rental units.  See Compl., ¶¶ 18-21.

Putting that aside, however, the Second Circuit's rejection of a similar argument in

Romea is instructive.  The defendant there had argued that applying both the procedural

requirements for eviction under New York law and the prohibitions in the FDCPA was more

than either Congress or the New York legislature could have intended.  The court explained that,

even if that were true, such fact would "not empower [the court] to disregard the plain language

of the FDCPA unless the result [would be] absurd or directly contravene[] the purpose of the

statute."  Romea, 163 F.3d at 118 (citing Helvering v. Hammel, 311 U.S. 504, 510-11 (1941)).

Because applying both schemes did neither, the court concluded that it was not permitted to read

an exemption into the statute that was clearly not there.

In a footnote, the court also pointed out that the FDCPA provides a mechanism to exempt

certain debt-collection practices from the Act's coverage where state law provides adequate

protections for consumers.  See id., 118 n.11.  Specifically, Section 1692o, titled "Exemption

from State regulation," provides that "[t]he [Federal Trade] Commission [now the Bureau for

Consumer Financial Protection, see The Dodd-Frank Wall Street Reform and Consumer

Protection Act, Pub. L. No. 111-203, § 1089(1) (2010),] shall by regulation exempt from the

requirements of this subchapter any class of debt collection practices within any State if the

Bureau determines that under the law of that State that class of debt collection practices is

subject to requirements substantially similar to those imposed by this subchapter, and that there

is adequate provision for enforcement."  15 U.S.C. § 1692o.  The Second Circuit explained that

"if the protections afforded tenants under New York's Article 7 [eviction] process do result in

'requirements substantially similar to those imposed by [the FDCPA],' then New York may

petition . . . to . . . exempt § 711 notices from the [Act]."  See Romea, 163 F.3d at 118 n.11.

As in <u>Romea</u>, the Court sees no basis for ignoring the plain reach of the Act.  Defendants have not offered any reasons to believe that applying the FDCPA here would lead to absurd results or would frustrate the goals of the statute.  See <u>Hubbard v. United States</u>, 514 U.S. 695, 703 (1995) ("In the ordinary case, absent any indication that doing so would frustrate Congress's clear intention or yield patent absurdity, our obligation is to apply the statute as Congress wrote it.") (internal quotation marks and citations omitted); <u>see also, e.g.</u>, <u>Kaymark</u>, 783 F.3d at 179 (finding rules for state-foreclosure actions were insufficient reason to ignore plain reach of statute, which "[n]owhere . . . exclude[s] foreclosure actions from its reach").  Indeed, they have offered nothing more than general assertions that the FDCPA is unnecessary to protect tenants in L&T Branch cases.

While tenants might not require any further safeguards because they "have the protection of an entire branch of D.C. Superior Court dedicated to and uniquely equipped to handle their disputes with their landlords," Reply at 5, the Court cannot exempt broad swaths of debt-collection practices from the FDCPA simply because <u>it</u> believes it wise to do so.  Defendants arguments are, instead, more properly addressed to the District, which may petition the Bureau for an exemption, <u>see</u> <u>Romea</u>, 163 F.3d at 118 n.11, or to "Congress,' which 'is, of course, free to amend the statute . . . .'" <u>Kaymark</u>, 783 F.3d at 179 (quoting <u>Jerman</u>, 559 U.S. at 604.  For now, their conduct remains within the Act's purview.

On a somewhat related note, Defendants also make much of the fact that Plaintiffs did not fully avail themselves of certain mechanisms to obtain corrections from them in the Superior Court proceedings.  See, e.g., Mot. at 2 n.1.  The thrust of their argument seems to be that they should not be held accountable for false statements in eviction complaints because the proper

way to address such statements is to bring them to the opposing party's attention and allow them

to amend their pleadings.  The Ninth Circuit directly rejected a similar argument in <u>Donohue</u>:

> [A]ll communications can be "amended" in this way by simply
> sending out a subsequent communication correcting the error.
> Sections 1692e and 1692f do not suggest that otherwise unlawful
> representations are permitted so long as they are followed up, at
> some later time, with a communication correcting the statements
> that gave rise to the communication's unlawful nature.  We see no
> reason to treat complaints differently where there was no effort to
> correct the error before an answer was filed.

592 F.3d at 1032 n.1; <u>see also</u> <u>Kaymark</u>, 783 F.3d at 178 n.3 ("We agree that simply because a

complaint is amendable is not a justification for removing it from the protections of the

FDCPA.").  Were it otherwise, defendants could make whatever false and deceptive statements

they liked and escape liability by simply correcting them after a tenant identified the error or by

pointing out that a tenant failed to do so.

Finally, before moving on to the alleged misrepresentations in the complaints, a final note

on the FDCPA's applicability is in order.  The preceding analysis has relied heavily on the fact

that the complaints filed against the named Plaintiffs included requests for money judgments.  At

this juncture, it is not entirely clear whether Plaintiffs seek to represent a class that includes only

those against whom Defendants sought eviction <u>and</u> money judgments, or whether they also wish

to represent those against whom Defendants sought repossession of the rental units alone.

<u>Compare</u> Compl., ¶ 36 (indicating that Plaintiffs "seek to represent a class consisting of <u>all</u>

individuals residing in federally and/or locally subsidized rental housing units within the District

of Columbia which are owned by landlords represented by the Raddatz Firm and who have been,

are now, or will in the future be subject to legal proceedings filed in the L/T Branch of the D.C.

Superior Court in which the Raddatz Firm misrepresents the subsidy status of their rental

properties") (emphasis added), <u>with</u> Opp. at 1, 11-12, 16 (arguing Defendants engaged in debt

collection largely because they sought money judgments against the named Plaintiffs).  Because the intended and actual contours of the class are not yet known, the Court need not decide, at this time, whether requests for money judgments are necessary to trigger the Act's protections.  It leaves it to the parties to address the issue in greater depth in the future.

      B.  <u>Plausible Claim</u>

The Court now turns to Defendants' contention that the alleged misrepresentations could not have violated the Act's substantive provisions.  As discussed previously, Plaintiffs invoke two of those provisions here.  The first prohibits "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  The second prohibits the use of "unfair or unconscionable means" to collect a debt.  <u>Id.</u>, § 1692f.  Their claims under both are premised on the same conduct – <i>i.e.</i>, Defendants' misrepresenting the subsidy status of Plaintiffs' rental properties.

Although this circuit has not addressed the standard that governs conduct under these provisions, numerous others have held that "[w]hether conduct violates §§ 1692e or 1692f requires an objective analysis that takes into account whether 'the least sophisticated debtor would likely be misled by the communication.'"  <u>Donohue</u>, 592 F.3d at 1030; <u>see</u> <u>Jacobson v. Healthcare Financial Servs., Inc.</u>, 516 F.3d 85, 90 (2d Cir. 2008); <u>Powell v. Palisades Acquisition XVI, LLC</u>, 782 F.3d 119, 126 (4th Cir. 2014); <u>Currier</u>, 762 F.3d at 533; <u>Crawford v. LVNV Funding, LLC</u>, 758 F.3d 1254, 1258 (11th Cir. 2014); <u>Jones v. Law Office of David Sean Dufek</u>, No. 14-533, 2015 WL 73072, at *2-3 (D.D.C. Jan. 6, 2015) (applying "least sophisticated consumer" standard); <u>see also, e.g.</u>, <u>McMillan v. Collection Professionals, Inc.</u>, 455 F.3d 754, 758 (7th Cir. 2006) (adopting similar "unsophisticated debtor" standard).

This standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." <u>Tourgeman v. Collins Financial Servs., Inc.</u>, 755 F.3d 1109, 1119 (9th Cir. 2014).  At the same time, "[m]ost courts agree that although the least sophisticated debtor may be uninformed, naïve, and gullible, . . . her interpretation of a collection notice cannot be bizarre or unreasonable."  <u>Id.</u> (internal quotation marks and citation omitted); <u>see also, e.g.</u>, <u>Gabriele v. American Home Mortg. Serving, Inc.</u>, 503 F. App'x 89, 94 (2d Cir. 2012) ("FDCPA protection does not extend to every bizarre or idiosyncratic interpretation of a collection notice and courts should apply the standard in a manner that protects debt collectors against liability for unreasonable misinterpretations.") (internal quotation marks and citations omitted); <u>Currier</u>, 762 F.3d at 533 ("This standard recognizes that the FDCPA protects the gullible and the shrewd alike while simultaneously presuming a basic level of reasonableness and understanding on the part of the debtor, thus preventing liability for bizarre or idiosyncratic interpretations of debt collection notices.").

Some circuits have, additionally, articulated a materiality requirement.  <u>See, e.g.</u>, <u>Hahn v. Triumph Partnerships, LLC</u>, 557 F.3d 755, 757 (7th Cir. 2009) (explaining that "[m]ateriality is an ordinary element of any federal claim based on a false or misleading statement" and holding that materiality is required under § 1692e); <u>Donohue</u>, 592 F.3d at 1033 (finding the reasoning in <u>Hahn</u> "persuasive" and concluding that "false but non-material representations" are not actionable).  They have done so with the understanding that "[t]he statute is designed to . . . help[] consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)."  <u>Hahn</u>, 557 F.3d at 757-58.  These courts have thus concluded that "if a statement would not mislead the [least sophisticated] consumer, it does not violate the Act – even if it is

false in some technical sense." Id. (alterations, internal quotation marks, and citation omitted);

see also, e.g., Powell, 782 F.3d at 126.  In other words, "[i]n assessing FDCPA liability, [courts]

are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely

misleading statements that may frustrate a customer's ability to intelligently choose his or her

response." Donohue, 592 F.3d at 1034.

Applying these standards, the Court concludes that Plaintiffs have stated a claim under

both § 1692e and § 1692f.  According to the Complaint, Defendants falsely averred in the suits

for possession that Plaintiffs resided in non-subsidized units.  See Compl., ¶¶ 22-26.[1]  These

misrepresentations would appear to be material since Plaintiffs have asserted – and Defendants

have not disputed – that whether rental properties are subsidized is relevant to the availability of

statutory and regulatory defenses to eviction.  In fact, the instructions for completing the

standardized eviction complaint for nonpayment of rent cautions filers that "you may be limited

in your ability to seek other fees" – such as fees for water – "if the property is subsidized or

subject to rent control."  See Verified Complaint for Possession of Real Property – Form 1A

Instructions.

Misrepresenting rental units as not subsidized could, therefore, impede a tenant's ability

to "intelligently choose his or her response" to Defendants' collection efforts.  Unsophisticated

consumers may, for instance, be unable to accurately apprise potential attorneys about the

subsidy status of their properties.  That could, in turn, affect counsel's ability to defend against

eviction for the nonpayment of their client's debts or to settle those debts to avoid eviction.  See

id., ¶¶ 21; see also Tourgeman, 755 F.3d at 1123 (noting that "the consumer who engages legal

---

[1] Plaintiffs have also alleged that Defendants misrepresented the nature of their debts by improperly indicating that their unpaid water fees could be legally deemed unpaid rent.  See Compl., ¶ 21; Opp. at 21.  Although this would appear to constitute a significant misrepresentation, Plaintiffs do not rely on it in their briefing.  As a result, the Court at this juncture confines its discussion to the subsidization issue.

counsel might be unable to accurately apprise the lawyer of the relevant circumstances, potentially leading to lost opportunities to settle the debt"). These consumers are also unlikely to know, in the absence of counsel, that the subsidy status of their properties could affect the availability of defenses to eviction, and they may, consequently, fail to correct the record regarding such fact. Cf. Phillips v. Asset Acceptance, LLC, 736 F.3d 1076, 1079 (7th Cir. 2013) (filing stale lawsuits against consumers violates FDCPA "[b]ecause few unsophisticated consumers would be aware that a statute of limitations could be used to defend against lawsuits based on stale debts," and "such consumers would unwittingly acquiesce to such lawsuits") (internal quotation marks and citation omitted). At the end of the day, making false statements to impede tenants' ability to discover potential defenses to eviction for the nonpayment of their debts strikes the Court as the sort of deceptive and unfair behavior that the Act was intended to prevent.

Defendants are not yet ready to surrender the field. They first contend that the essence of Plaintiffs' Complaint is that Defendants misled L&T Branch judges, and that the FDCPA does not protect them. See Mot. at 9-10; Reply at 1. They point to Plaintiffs' allegations that correctly indicating the subsidy status of rental units is important because it may alert judges and attorneys to tenants' rights to assert certain defenses. See Compl., ¶¶ 20, 21. Notably, the text of the FDCPA does not indicate to whom a communication or practice must be directed to be actionable. Courts have thus struggled to determine whether and when conduct aimed at misleading attorneys and judges is covered by the Act. Compare, e.g., O'Rourke v. Palisades Acquisition XVI, LLC, 635 F.3d 938, 944 (7th Cir. 2011) (finding plaintiff failed to state a claim because he only alleged that defendant misled judges), with Hemmingsen v. Messerli & Kramer,

P.A., 674 F.3d 814, 818 (8th Cir. 2012) (declining to hold that statements made to mislead court could never violate statute and advising case-by-case approach).

This case, however, is unlike many of those in which courts have held that false statements aimed at misleading state-court judges are not covered by the Act. Consider, for example, Walsh v. Law Offices of Howard Lee Schiff, P.C., No. 11-1111, 2012 WL 4372251 (D. Conn. 2012). The plaintiff there had alleged that various statements that a law firm made in the course of a debt-collection suit were false, including, for example, its certifications that it had mailed pleadings to the opposing party on the dates that they were filed when they were actually mailed one to two days later. See id. at *1. The court found that such statements did not violate the FDCPA because they were not materially false or misleading. In particular, they "were directed at the court, rather than [the plaintiff] herself, and concerned procedural deficiencies during the course of litigation that bore no relation to the underlying debt." Id. at *5. Here, by contrast, Plaintiffs have alleged that the false statements were intended, at least in part, to mislead the tenants about the subsidized status of their properties in order to decrease the likelihood that they would be advised of potential defenses to eviction for their debts. See, e.g., Compl., ¶ 1 (alleging that the misrepresentations were "intended to mislead, and/or have the effect of misleading, the subjects of these Complaints and the D.C. Superior Court") (emphasis added); id., ¶ 2 (alleging that the "false characterization" of the units' subsidy status was meant to "affirmatively . . . mislead the tenants for the unilateral benefit of the Defendants' landlord clients" and "to avoid alerting the tribunal to the existence of special defenses"). The statements were also directly relevant to the underlying debts – namely, to Defendants' ability to evict Plaintiffs for failure to pay their water fees.

This case similarly differs from O'Rourke, which held that a false exhibit attached to a state-court complaint did not give rise to liability under Section 1692e because the plaintiff only alleged that it would mislead a state-court judge.  The plaintiff had argued there that the defendant law firm filed attachments to state-court complaints that looked like credit-card statements in the hopes of more easily obtaining default judgments.  See 635 F.3d at 939-40.  He alleged that the defendant did so to preempt judges' requests for proof of the firm's claims before entering such judgments.  See id.  The Seventh Circuit concluded that he had failed to state a claim under Section 1692e because he had only alleged that the attachments would mislead judges about the firm's entitlement to default judgments; he had not alleged that the actions would mislead consumers in any way.  See id. at 944.  Indeed, the allegations rested on the fact that consumers were never involved in the proceedings.  See id. at 939-40.  Even assuming this reasoning is persuasive, Plaintiffs here allege that Defendants made false statements in order to mislead them.

Moving on, Defendants next suggest that Plaintiffs have failed to state a claim because they are "unable to establish that the alleged misstatements in the eviction complaints . . . were material to the existence or amount of any debt the Plaintiffs owed . . . ."  Reply at 1, 3.  They contend, in other words, that because Plaintiffs actually owed the amounts alleged, their representations could not have violated Section 1692e or 1692f.  The FDCPA's provisions, however, are not so narrow.  Sections 1692e and 1692f plainly proscribe debt-collection practices that go beyond misrepresenting the existence or size of a debt.  To take just a few examples, Section 1692e prohibits the use of "false representation[s] or implication[s] that the consumer committed any crime . . . in order to disgrace the consumer," 15 U.S.C. § 1692e(7), and Section 1692f prohibits "[c]ommunicating with a consumer regarding a debt by post card,"

id., § 1692f(7), or "[d]epositing or threatening to deposit any postdated check . . . prior to the

date on such check or instrument." Id., § 1692f(4).  The Act's provisions are thus more broadly

aimed at any abusive conduct taken to collect on a debt.  Misrepresenting the subsidy status of

rental units to decrease the chances that an attorney or judge might advise tenants of potential

defenses to eviction is the type of deceptive behavior that the FDCPA was designed to stop.

Defendants also argue that these misrepresentations could not have misled the named

Plaintiffs or the class they seek to represent because tenants would know whether they receive

rent subsidies.  See Mot. at 10-11.  They draw upon cases finding that even the least

sophisticated debtors cannot be misled about facts clearly known to them.  They point, for

instance, to the Second Circuit's decision in Gabriele, which held that certain false statements in

foreclosure filings could not have misled the plaintiff because they involved assertions of fact he

would have known were untrue.  See 503 F. App'x at 95.  Specifically, the court determined that

the filings, "even if false, [c]ould not mislead the least sophisticated consumer, particularly

represented by counsel, . . . into believing that he had already received an exhibit he had not

received, that he had not filed counterclaims that he had filed three months before, or that he was

not under consideration for a program he was in mediation to address."  Id.  Defendants also

point to Washington v. Roosen, Varchetti & Oliver, PPLC, 894 F. Supp. 2d 1015 (W.D. Mich.

2012).  That case held that even unsophisticated consumers could not be misled about whether

they have copies of credit-card agreements.  Id. at 1023.  It explained that the plaintiffs "would

know whether they had in their possession a copy of the credit-card agreement.  Such knowledge

hardly requires technical expertise or legal training."  Id.

Even if the Court were bound by these cases, it is easy to imagine that the least

sophisticated debtor could be misled about whether her rent "is subsidized by the federal or local

government[.]"  Compl., ¶ 20.  Such fact is rather technical, and the uninformed may not

understand how their rents are lowered or by whom.  As Plaintiffs point out in their Opposition,

it is also entirely plausible that an unsophisticated consumer "might assume that his/her failure to

keep current on rent or utilities had the effect of forfeiting or cancelling the previously-existing

subsidy."  Opp. at 20.

In sum, the Court believes that Plaintiffs have alleged sufficient facts to state a plausible

claim to relief under Sections 1692e and 1692f.

C.  Available Relief

Defendants last contend that the claims for declaratory and injunctive relief must be

dismissed because the Act does not permit such relief in private suits.  See Mot. at 11-12; Reply

at 7.  They emphasize that Section 1692k, which authorizes private causes of action, says nothing

about equitable remedies; it mentions only private litigants' right to recover actual and statutory

damages.  See 15 U.S.C. § 1692k.  They also underscore that "[m]ost courts that have examined

the issue have held that equitable relief is not available under the FDCPA to private parties."

Mot. at 11 (citing Weiss v. Regal Collectors, 385 F.3d 337, 341 (3d Cir. 2004), and Strong v.

Nat'l Credit Mgmt. Co., 600 F. Supp. 46 (E.D. Ark. 1984)).

Defendants' points are well taken.  It does, indeed, appear that most courts that have

considered the issue have concluded that they are not empowered to grant equitable remedies to

private plaintiffs.  See, e.g., Crawford v. Equifax Payment Servs., Inc., 201 F.3d 877, 882 (7th

Cir. 2000) ("[A]ll private actions under the Fair Debt Collection Practices Act are for

damages."); Sibley v. Fulton DeKalb Collection Serv., 677 F.2d 830, 834 (11th Cir. 1982)

(observing in *dicta* that the FDCPA does not provide for injunctive relief); Zanni v. Lippold, 119

F.R.D. 32, 33-34 (C.D. Ill. 1988) (denying class certification for injunctive relief based on

statute's text and legislative history evidencing intent not to allow injunctive relief in private

suits); Duran v. Credit Bureau of Yuma, Inc., 93 F.R.D. 607, 608 (D. Ariz. 1982) (finding court

was "without jurisdiction to grant injunctive relief to a consumer," based on statute's text and

legislative history, as well as cases interpreting similar provisions in other consumer-protection

statutes); see also, e.g., Bolin v. Sears, Roebuck & Co., 231 F.3d 970, 977 n.39 (5th Cir. 2000)

(explaining that although it had not yet ruled on the issue, "courts uniformly hold that the

FDCPA does not authorize equitable relief," and noting that it had previously "held that similar

provisions in the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, do not create a private

injunctive remedy").

In coming to this conclusion, these courts have largely relied on the fact that Section

1692l of the Act authorizes the FTC to pursue equitable remedies, while Section 1692k is silent

regarding whether such relief is available to private parties.  The Third Circuit, for instance, held

in Weiss that "[b]ecause the statute explicitly provides declaratory and equitable relief only

through action by the Federal Trade Commission, we believe the different penalty structure

demonstrates Congress's intent to preclude equitable relief in private actions."  385 F.3d at 342.

Yet this is not necessarily as easy as it appears.  Here, Section 1692k is silent as to the

availability of equitable relief.  Section 1692l, moreover, does not specifically mention the FTC's

ability to obtain injunctive relief.  It merely authorizes the Commission to pursue such relief by

cross-reference to another Act – that is, by authorizing the FTC "to enforce compliance with this

subchapter" by using all of the "functions and powers" available to it under the Federal Trade

Commission Act.  See 15 U.S.C. § 1692l(a).  The Supreme Court has held that "[a]bsent the

clearest command to the contrary from Congress, federal courts retain their equitable power to

issue injunctions in suits over which they have jurisdiction."  Califano v. Yamasaki, 442 U.S.

682, 704 (1979); <u>see also</u> <u>Cobell v. Norton</u>, 240 F.3d 1081, 1108 (D.C. Cir. 2001) ("[C]ourts are presumed to possess the full range of remedial powers – legal as well as equitable – unless Congress has expressly restricted their exercise.") (internal quotation marks and citations omitted).  Without further research, the Court cannot definitively conclude that the statute's structure provides the sort of clear equity-stripping command that the Supreme Court had in mind.

Thankfully, however, it need not decide the issue now.  The case is currently at the motion-to-dismiss stage.  Because Plaintiffs have stated a claim for damages under the Act, questions regarding other available remedies can wait for another day.  That will also give the parties an additional opportunity to brief this issue more fully.

## IV.    Conclusion

For the foregoing reasons, the Court will deny Defendants' Motion to Dismiss Plaintiffs' Complaint.  A contemporaneous Order will so state.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  <u>June 18, 2015</u>